STATE, RESPONDENT, v. BAKER, APPELLANT.

[Argued, March 15, 1893. Decided, April 13, 1893.]

CRIMINAL LAW—*Homicide*—*Instructions, duty of the court as to.*—It is the duty of the court upon a trial for murder, where all the degrees of homicide are submitted to the jury as issues to be passed upon and determined, to clearly define in its instructions each degree of homicide of which the defendant could be convicted.

SAME—*Same*—*Definition of murder in second degree.*—Where no other definition of murder in the second degree is given by the court in its instructions than that which is found in the words of the statute attached to the definition of murder in the first degree, to wit, "all other kinds of murder shall be deemed

murder in the second degree" the omission is error, as such definition does not distinguish it from murder in the first degree and manslaughter so that the jury could determine from the evidence of which of the degrees defendant was guilty.

SAME—*Same—Manslaughter—Sufficiency of instruction.*—An instruction that "if the jury believe from the evidence that the defendant had been injured or received provocation from the person killed, whatever that injury or provocation might have been, yet if, after receiving such injury or provocation there should have been an interval between the provocation given and the killing sufficient for the voice of reason to be heard, the killing shall be attributed to deliberate revenge, and shall be deemed murder in the first degree," while not fatally defective when considered with the whole charge, is unnecessarily narrowed in omitting the words of the statute qualifying provocation, and also all reference to "time for the passions to cool" in referring to the interval of time for the voice of reason to be heard.

*Appeal from Seventh Judicial District, Custer County.*

Conviction for murder in the first degree. Defendant was tried before MILBURN, J. Reversed.

*Middleton & Light,* for Appellant.

*Henri J. Haskell,* Attorney-General, *J. W. Strevell,* and *T. J. Porter,* for the state, Respondent.

PEMBERTON, C. J.—On the third day of December, 1892, the appellant was convicted of the crime of murder in the first degree, and on the tenth day of the same month the judgment of the lower court was rendered that the appellant be hanged on a day therein named. The appellant moved for a new trial. The motion was denied. From the order overruling said motion, as well as the judgment of the court, this appeal is prosecuted.

The principal error assigned is as follows: "That the court, by instructions, authorized the jury to find the defendant guilty of murder in the first degree or manslaughter, and did not sufficiently or at all define murder in the second degree in his instructions." From an inspection of the record, it appears that the court below in its instructions defined murder in the first degree and manslaughter, the only definition of murder in the second degree being found in these words of the statute, attached to the definition of murder in the first degree, to wit: "All other kinds of murder shall be deemed murder in the second degree"; and, without any other definition of murder

in the second degree, the court in its instructions in several places told the jury that they were authorized, if the evidence warranted it, to find appellant guilty of either murder in the first degree, murder in the second degree, or manslaughter, under the information in this case.

The question for this court to determine is, whether this was a sufficient definition of murder in the second degree to enable the jury to determine the essential characteristics of this degree of homicide. It was the duty of the court to so fully declare the law by its instructions upon every degree of crime of which the appellant could be convicted under the information, as to give him the benefit of having the evidence considered by the jury, under a full knowledge of all the essential elements of each degree of crime for which a verdict could be rendered against him. We think the authorities are substantially uniform upon this subject. This doctrine is fully and forcibly discussed in *State* v. *Meyer*, 58 Vt. 457, under a statute like ours, in which case the court says: "The reading of the statute, declaring what was murder in the first degree, and that all other kinds of murder shall be murder of the second degree, was not a sufficient explanation of the two degrees. The jury, from that reading, without explanation, would have no appreciation of the distinguishing characteristics of the two degrees, which have confessedly been something of a puzzle to lawyers and judges. How many would understand from the reading of the statute defining the first degree of murder and the phrase, 'All other kinds of murder shall be murder of the second degree,' what in fact constituted murder in the second degree? How many men not read in the law would understand from it that murder in the second degree is the unlawful killing of a human being with malice aforethought, but without deliberation, premeditation, or preconcerted design to kill, and that the distinguishing feature of the two degrees rests in the absence of deliberation, premeditation, and preconcerted design from the second degree"? This case is exactly like the one under discussion. In both cases the trial court read the statutes defining the different degrees of homicide, or copied them into their instructions verbatim. The reasoning in *State* v. *Meyer, supra,* seems so convincing and con-

clusive that any other conclusion than therein stated seems to be unauthorized. This view of the law is supported by the following authorities. (Wharton's Criminal Pleading and Practice, § 709 et seq.; *State* v. *Brainard,* 25 Iowa, 572; *Owen* v. *Owen,* 22 Iowa, 270; *Wynne* v. *State,* 56 Ga. 113; *Lancaster* v. *State,* 3 Cold. 339; 91 Am. Dec. 288; *State* v. *Wyatt,* 50 Mo. 309; *Territory* v. *Scott,* 7 Mont. 407; Criminal Practice Act, § 326; 1 Bishop's Criminal Procedure, § 980.) From a consideration of these authorities we are of opinion that the court, in its instructions, should have fully and completely defined murder in the second degree, distinguishing it from murder in the first degree and manslaughter, so that the jury could have had before them all the essential elements of each of these degrees of homicide, so that they could intelligently determine from the evidence which of the degrees appellant was guilty of, if guilty at all. In cases where it is clear to the mind of the court that there is no evidence to reduce the killing to any lower degree of homicide than murder in the first degree—for instance, in cases where the death is produced by poisoning or lying in wait—the court is justified in refusing to instruct the jury in relation to such lower degrees of homicide. But this case is widely distinguished from such cases. In this case all the degrees of homicide known to our statute were submitted to the jury as issues to be passed upon and determined by the evidence and instructions of the court. In such cases the court should clearly define in its instructions each degree of homicide. This was not done in this case, and we think the omission was error.

Instruction 16, given by the court, is as follows: "If the jury, from the evidence in this case, believe, beyond a reasonable doubt, that the defendant, at or about the time charged in the information, killed Austin McDonald at and within the county of Custer, then it will devolve upon the jury, under the evidence, to determine what degree of offense such killing constituted; and if the jury believe from the evidence that the defendant had been injured or received provocation from the person killed, whatever that injury or provocation might have been, yet if, after receiving such injury or provocation, there should have been an interval between the provocation given

and the killing sufficient for the voice of reason to be heard, the killing shall be attributed to deliberate revenge, and shall be deemed murder in the first degree, and the jury should so find by their verdict." We think this instruction is narrowed unnecessarily by the court, while it might not be considered fatally defective when taken in connection with the whole charge. In drawing the distinction in this instruction between murder in the first degree and manslaughter, the court omitted the words qualifying the provocation; and also, in his reference to the interval of time for the voice of reason to be heard, he omits all reference to time for the "passions to cool." These words were put into the statute by the legislature for a purpose, and it is dangerous to omit these statutory words defining any degree of homicide in a charge to the jury, unless the court is careful in using words equivalent in meaning. The order overruling the motion for new trial is overruled; the judgment is reversed, and a new trial ordered.

*Reversed.*

HARWOOD and DE WITT, JJ., concur.