THE HON. GEORGE R. MILBURN,  }
THE HON. WILLIAM L. HOLLOWAY,  }  Associate Justices.

---

COMMISSIONERS:

JOHN B. CLAYBERG,*

LEW L. CALLAWAY,*

W. H. POORMAN.*

---

STATE, RESPONDENT, *v.* FELKER, APPELLANT.

(No. 1,818.)

(Submitted February 19, 1903.  Decided March 6, 1903.)

*Criminal Law—Homicide—Justification—Defense of Another—Evidence — Admissibility — Prior Attacks on Other—Threats—Burden of Proof—Instructions—Harmless Error.*

---

* Qualified April 1, 1903.

1. Evidence in trial for homicide examined and *held* not to show, as a matter of law, that it was justifiable.

2. Every fact which would be competent to establish justification of homicide committed in self-defense is competent to establish justification of homicide committed in defense of others.

3. On the issue whether defendant, when he killed deceased, believed that deceased was about to assault his wife—defendant's sister—testimony showing that, to defendant's knowledge, deceased had made prior assaults on his wife, was admissible.

4. The fact that the prior assaults occurred before November 30th, while the homicide occurred December 15th, did not make the evidence inadmissible, as too remote.

5. In a prosecution for homicide, insurance policies payable to decedent's wife—defendant's sister—should not be admitted to show motive, in the absence of evidence that defendant knew of their existence, and that they were valid, subsisting contracts, or that defendant believed them to be such.

6. On the issue whether, when defendant killed deceased, deceased was about to assault his wife—defendant's sister—or was so acting as to warrant defendant in believing he was about to assault her, testimony of prior threats by deceased against his wife, though not communicated to defendant, was admissible.

7. An instruction defining the term "preponderance of the evidence" has no place in a criminal trial.

8. Under Penal Code, Section 2081, no greater burden rests upon the defendant than to introduce sufficient evidence to raise a reasonable doubt as to the existence of such so-called affirmative defenses as alibi, insanity and justification.

9. Where on a charge of murder defendant was convicted of manslaughter only, the fact that the trial court gave in its charge the statutory definitions of murder in the first and second degrees,—without an additional instruction distinguishing between the two degrees, is not reversible error.

10. *Quaere:* Whether upon a charge of murder a verdict of manslaughter acquits the defendant of murder?

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

LLEWELLYN L. FELKER was convicted of manslaughter, and appeals. Reversed.

## STATEMENT OF THE CASE.

The defendant was charged by information with the crime of murder, and a trial had upon his plea of not guilty resulted in a verdict of manslaughter. Judgment was thereupon entered fixing his punishment at hard labor in the state prison for a term of ten years. He has appealed from the judgment and an order denying him a new trial.

The facts leading up to and attending the homicide, about which there is no controversy, are the following: The deceased,

John V. Cunningham, was the husband of a sister of the defendant. Cunningham kept a lodging house at 55 West Galena street, in the city of Butte. He and his wife had been having differences for a year or more, the cause of which does not distinctly appear, though statements made by some of the witnesses warrant the inference that they were the result of the violent temper of Cunningham when excited by drink. The killing occurred on December 15, 1900. At that time the couple had separated, the wife and the two children living with her mother in another part of the city. The wife had instituted a prosecution against her husband for an assault committed upon her by him on November 30th previous to the homicide. She had also brought suit against him for divorce. She was then confined to her bed as the result of wounds inflicted upon her by Cunningham with a knife at the time the assault was made. The immediate cause of the assault was resistance offered by Mrs. Cunningham to an attempt by Cunningham to take from her their older child—a son. Cunningham was anxious to effect a reconciliation, and, ostensibly for this purpose, had gone from the lodging house to visit his wife in company with one McKinstry. Besides Cunningham, there were present at the bedside the defendant, his mother, and McKinstry. Other persons were passing in and out of the room. Cunningham took to his wife a bunch of flowers, and upon entering the room gave them to her, at the same time kissing her with some demonstration of affection, and inquiring with apparent solicitude after her health. After some conversation, Cunningham stated that he had had no breakfast, and requested Mrs. Felker, the mother, to procure some for him. This she refused to do. She also refused to allow the hired girl to get him breakfast, saying that the hired girl had enough of work without being bothered by him. Finally, however, Mrs. Felker brought in some cakes and wine, of which those present partook. Thereupon Cunningham requested that he be left alone with his wife for a few moments. Objection being made by the mother or brother, or both, the request was referred to the wife, who told Cunningham to speak out what he had to say in presence of the company. He was

then sitting on the bedside, or upon a chair near by. He bent down and spoke in a whisper to his wife. The others could not hear all he said, but the uncontradicted statement of the wife is to the effect that he urged her to stop the "prosecution" against him; referring generally to all the legal proceedings then pending. She put him off, promising to answer him definitely when she got better; being afraid, she stated, to flatly refuse his request. From this point the statements of the witnesses are conflicting and somewhat confused. There is evidence tending to show that Cunningham, after some hesitation, said, substantially, that the defendant would do all he could to prevent a reconciliation, to which defendant replied, "Excuse me, but you are telling an untruth." Some of the witnesses say that the reply was, "Jack (referring to Cunningham), you are a damned liar." Cunningham had lost his right arm. During the conversation he had been sitting with his left side toward his wife. When this language was used, the mother began to urge Cunningham to go; saying that the interview had already been too long, the wife being made nervous by his presence. Some of the state's witnesses say that he started to leave, saying to the defendant: "Never mind now, Llewellyn. Cut that out. I don't want any trouble." This exhortation was also made by McKinstry, who said to defendant: "Don't have any trouble here. This is no place to have any trouble." Other witnesses— among them defendant and Mrs. Cunningham—stated that Cunningham, instead of going, as he was urged to do, drew a dirk from under his coat, and leaned over his wife, attempting to stab her, and that thereupon the defendant drew his revolver and emptied its contents into the body of Cunningham. Some of the witnesses state that only one shot was fired. Others swear that five or six were fired, and that, as Cunningham sank to the floor, the dirk fell from his hands, among the bedclothes, where it was afterwards found. Beyond any dispute, at least three shots were fired, as is shown by the wounds upon the body of deceased. McKinstry, the only eyewitness of the tragedy who testified for the state, says that he saw no knife until after the homicide, and after the body had been removed to an ad-

joining room.   Upon examination there was found upon the back of the body, between the left shoulder blade and the spinal column, a wound one-half inch in length and about three-quarters of an inch in depth, apparently made by a stab with a knife or other sharp instrument.   The defendant knew that the deceased and his sister intended to have an interview about noon on the day of the killing, and was at the house of his mother in order to be present; his sister having expressed a wish to have him present. , He explains his possession of the revolver at that time by saying that he had put it into his pocket, intending to go out upon the hills with his little nephew, the son of deceased, to hunt jackrabbits, and had already started from the house for that purpose, when, observing the deceased approaching, he returned, in order to be present at the interview.   There was evidence of previous threats by the deceased against his wife.   McKinstry stated in another place in his testimony that, when he first saw the dirk, the defendant had it in one hand, and the revolver in the other, and that he held it up, saying that the deceased had it and was going to stab with it, but did not say whom he was going to stab.

This brief statement gives a fair general view of the evidence submitted to the jury.

*Mr. Lewis A. Smith, Messrs. McHatton & Cotter, and Mr. E. S. Booth,* for Appellant.

*Mr. James Donovan, Attorney General,* and *Mr. Peter Breen,* for the State.

The evidence of prior assaults by the deceased upon his wife was properly excluded; such alleged assaults were too remote.   (*Monroe* v. *State,* 5 Ga. 85; *People* v. *Henderson,* 28 Cal. 466; *Foster* v. *State,* 70 Miss.755; *Newcomb* v. *State,* 37 Miss. 283, 400.)

The defendant cannot prove threats made by the deceased, without also proving that such threats came to his knowledge before the killing.   (*Powell* v. *State,* 19 Ala. 577; *Rogers* v.

*State,* 62 Ala. 170; *Coker* v. *State,* 20 Ark. 53; *Vann* v.
*State,* 83 Ga. 44; *State* v. *Maloy,* 44 Ia. 104; *State* v. *Elliott,*
45 Ia. 486; *State* v. *Sullivan,* 51 Ia. 142; *State* v. *McCoy,* 29
La. Ann. 593; *State* v. *Fisher,* 33 La. Ann. 1344; *State* v.
*Chevalier,* 36 La. Ann. 81; *State* v. *Jackson,* 17 Mo. 544;
*People* v. *Henderson,* 28 Cal. 466; *People* v. *Lombard,* 17
Cal. 317; *Newcomb* v. *State,* 37 Miss. 383; *Lingo* v. *State,*
29 Ga. 470; *Vaughn* v. *State,* 8 Ga. 731; *Wilson* v. *State,* 17
L. R. A. 645; *State* v. *Bowser,* 42 La. Ann. 936; *State* v. *Dum-
phy,* 4 Minn. 438; *Davidson* v. *People,* 4 Colo. 147; *Bond* v.
*State,* 21 Fla. 752.)

The giving of an erroneous instruction is harmless where de-
fendant is acquitted of the offense charged to which the in-
struction applied.  (*State* v. *Stockwell,* 106 Mo. 36; *State* v.
*McIntosh,* 40 S. Car. 349; *People* v. *Swift,* 66 Cal. 348; *State*
v. *Murphy,* 61 Me. 56; *People* v. *Boling,* 83 Cal. 380; *Mackey*
v. *People,* 2 Colo. 13; *State* v. *Winter,* 72 Iowa, 627; *People*
v. *Wallace,* 101 Cal. 281.)


MR. CHIEF JUSTICE BRANTLY, after stating the case,
delivered the opinion of the court.


1.   It is argued by counsel for defendant that the evidence
is insufficient to warrant any other finding than that of justi-
fiable homicide.   With this view we cannot agree.   The state's
theory of the case at the trial was that the circumstances all
tended to show deliberate, premeditated murder, and that, in-
stead of being present merely for the purpose of protecting his
sister from any violence intended or threatened by the deceased,
the defendant armed himself and sought an excuse to kill Cun-
ningham, and did kill him without the slightest provocation,
other than the charge that the defendant was active in prevent-
ing a reconciliation between Cunningham and his wife.   In
support of this theory, it is argued that the wound upon the
back of the deceased indicated conclusively that the dirk was
drawn and used by the defendant, or, in any event, by some
other person than the deceased, and that the statements of Mrs.

Cunningham and the defendant—hostile and interested witnesses—that the deceased drew and used it in an assault upon the former is manifestly false. This view of the state's evidence, it is said, coupled with the additional fact that McKinstry, a disinterested witness, did not see the dirk until after the shooting was over, and then only in the hands of the defendant, who showed it to the witness, stating that the deceased had the weapon and was going to stab with it, and without stating whom he was going to stab, would have sustained a verdict of murder in either degree. Without pausing to discuss the various inferences which might find substantial foundation in the evidence, we are satisfied that the finding of the jury was fully justified, and that this court should not say, as a matter of law, that the trial court erred in refusing to set aside their verdict. With the credibility of witnesses this court has nothing to do; the determination of all questions of fact belonging exclusively to the trial court, whose findings upon them are conclusive upon appeal. Furthermore, for reasons appearing hereafter, the judgment and order must be reversed. We shall therefore not express an opinion as to whether the theory of the attorney general is supported by the evidence.

2. The defendant offered evidence tending to show that during the year 1900, and prior to November 30th, the date at which the deceased had assaulted his wife with a knife, he made two other felonious assaults upon her, and that the defendant had knowledge of them. This offer was made upon the theory that the homicide was justifiable, since it was done in resisting an attempt to commit murder upon a third person, and any fact which would have been competent for the jury to consider, had the alleged assault out of which the homicide grew been made upon the defendant himself, was competent evidence to sustain his defense in this case. The court excluded the evidence, and the defendant assigns error.

Our Penal Code (Section 361) declares that a homicide is justifiable by any person "when resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person." Under Section 362 of the

same Code, in order to justify the homicide, a bare fear upon the part of the defendant that murder, or other felony, or great bodily harm, is about to be committed on such other person, is not sufficient, but the circumstances must be such as to excite the fear of a reasonable person—in other words, the defendant is not required to wait until a felony is actually about to be committed, but he may act upon appearances which are sufficient to excite the apprehensions of a reasonable person in the same situation. The provisions of the statute put persons acting in defense of others upon the same plane as those acting in defense of themselves. Every fact, therefore, which would be competent to establish justification in the one case would, for the same reasons, be competent to establish it in the other. If the defense were that the killing had been done to preserve the life of the defendant, or to secure his person against great bodily harm, the fact that there had been previous difficulties between him and the deceased would clearly have been competent against him, to show the condition of feeling theretofore existing between them, and as tending to show malice or motive. (*State* v. *Shafer*, 26 Mont. 11, 66 Pac. 463.) If offered by the defendant in such case, they would be competent, as tending to enlighten the jury as to who was the assailant, and whether or not the defendant really and in good faith believed himself to be in danger of death or of suffering great bodily harm. So, also, the condition of mind which was known by the defendant to have been entertained by Cunningham against his wife, as manifested by these acts of violence toward her, would tend directly to show whether the appearances were such as to arouse fear in the defendant that she was in danger of death or of great bodily harm. The motions made by Cunningham at the time were to be interpreted by defendant, acting in good faith, as a reasonable man, in the light of such knowledge as he had of the condition of mind Cunningham had theretofore manifested toward his wife, and he was entitled to act upon them under the interpretation thus given them. It is entirely clear that any reasonable man, seeing one person about to commit an assault upon another, would upon the in-

stant call to mind such previous assault upon the same person, of which he had knowledge, exactly in the same way that he would recall like assaults upon himself, and he would be entitled to act upon the appearances in the one case as well as in the other. The jury, with knowledge of these conditions characterizing the acts of both parties, might conclude that the defendant acted in good faith in defense of the wife, and not from unlawful motives. (*State* v. *Peterson,* 24 Mont. 81, 60 Pac. 809.) The court had admitted evidence of the assault of November 30th upon this theory. Evidence showing the others was excluded upon the ground that they were too remote. This was prejudicial error. Their remoteness went altogether to the weight that should be given them, and not to their competency.

3. The court admitted in evidence two alleged insurance policies effected by Cunningham upon his own life, and made payable to his wife. This was done upon the theory that the evidence tended to show motive. Defendant's counsel objected to the introduction of them on the ground that they were incompetent and immaterial. They were admitted upon the promise of the county attorney that he would thereafter show that they were valid, subsisting policies, and their existence known to the defendant. Such supplementary proof was not made. The defendant, however, made no motion to have the evidence stricken from the record. As the cause must be tried again, it is pertinent to remark in this connection that while "any evidence that tends to show that defendant had a motive for killing the deceased is always relevant, as rendering more probable the fact that he did kill him" (*State* v. *Lucey,* 24 Mont. 295, 61 Pac. 994), such evidence must, always, in some slight degree, at least, tend to establish the probability of the existence of the motive alleged. The defendant could not possibly have entertained any purpose to murder the deceased in order to secure the payment of the policies to the wife, as the state sought to show, without knowledge of the fact of their existence. Nor would the additional fact that he knew of their existence render them of any evidentiary value or pertinence in the absence of some showing that they were valid, subsisting

contracts, or that the defendant believed them to be such. As the evidence was left at the close of the state's case, the court should have stricken it out of its own motion.

4.   There was offered on behalf of the defendant evidence of threats made by the deceased against his wife on November 30th, soon after the assault was committed on that day, and on the morning of the day of the killing, which had not been communicated to the defendant. This was excluded on the ground that such evidence "is only allowed where there is no other way of proving who is the aggressor." In determining the competency of this evidence, it must be borne in mind that evidence had already been given tending to show that the homicide was justifiable upon the ground that the accused was defending his sister against an attempt to take her life or to inflict upon her great bodily injury; thus presenting, upon disputed testimony, a question for the jury to decide. It was their duty to inquire whether the assault was in fact made by the deceased in the first instance, and whether, if such were the case, his acts, interpreted in the light of all the surrounding circumstances, were sufficient to create in the mind of the defendant a reasonable fear that Mrs. Cunningham was in danger of losing her life or of receiving great bodily harm at the hands of the deceased. Evidence of communicated threats is always admissible in such cases, as tending to show that at the time the homicide was committed there was in the mind of the defendant a belief that the acts and motions of the deceased meant imminent peril to himself. Aided by it, the jury can intelligently answer the question whether the deceased probably intended to carry them into effect, and whether the defendant acted upon the belief that such was the case. The extent of the probability that the deceased entertained such intentions would be the precise extent of the justification of the act of the defendant. "Previous uncommunicated threats of the decedent against the defendant are admissible as evidence of the decedent's animus, where a controversy exists as to who was the assailant, or as to whether overt acts were then committed by the decedent which were sufficient to create in the mind of

the defendant a reasonable fear that he was in imminent danger of suffering great bodily harm or of losing his life at the hands of the decedent." (*State* v. *Shadwell,* 26 Mont. 52, 66 Pac. 508.) The controversy as to who was in the wrong can be correctly determined only by revealing to the jury, so far as may be, the exact relations, actions, and intentions of the parties to the affray, so that the jury may give due weight to every fact which influenced the mind of the defendant. As we have already said, evidence which would have been competent had the homicide been committed by defendant to repel an alleged felonious assault against himself, was for the same reason competent in favor of defendant when he acted for a third person, which he alleges as a justification in the present case. It was prejudicial error to exclude the evidence offered.

5. Among other instructions submitted to the jury, the court gave one embodying a definition of what is meant by the term "preponderance of the evidence," and directing the jury how they should proceed in order to determine on which side of the controversy it lay. In view of the other instructions given, it may be that this was not prejudicial error, but such an instruction has no place in a criminal trial. It is scarcely necessary to remark that the guilt of the defendant must be made out by evidence sufficient to establish every element of the crime charged, or of any included therein, of which the defendant may be convicted, to the satisfaction of the jury, beyond a reasonable doubt. In this state it is now the established rule that even where the so-called affirmative defenses are interposed—such as alibi, insanity, and justifiable homicide—no greater burden rests upon the defendant than to introduce sufficient evidence to raise a reasonable doubt. This rule has been applied in the construction of Section 2081 of the Penal Code; the cases cited by the attorney general (*Territory* v. *Rowand,* 8 Mont. 110, 19 Pac. 595; *Territory* v. *Edmonson,* 4 Mont. 141, 1 Pac. 738, and like cases) laying down a different rule, having been disapproved. (*State* v. *Peel,* 23 Mont. 538, 59 Pac. 169, 75 Am. St. Rep. 529.)

6.    The court gave the definition of murder in the words of the statute.    Then followed the statutory definitions of murder of the first and second degrees, of manslaughter, and of justifiable homicide; but no additional instruction was given, distinguishing between murder of the first and second degrees. This was error.    Like instructions were considered by this court in *State* v. *Baker,* 13 Mont. 160, 32 Pac. 647, and *State* v. *Shafer,* 26 Mont. 11, 6 Pac. 463; and it was there held that it should not be left to the jury to draw this distinction for themselves, but that it is the duty of the court to do it for them, whether requested by counsel or not.    If there were no other error in the case, we should hold that this lapse in the instructions was not prejudicial, because the defendant was convicted of manslaughter only.    He therefore would not be in a position to complain; nor would it be necessary to notice it at all, were it the established rule in this state that upon a charge of murder a verdict of manslaughter acquits the defendant of murder. It was suggested in the argument that this is the rule.    The question does not properly arise in this case, however, and we refrain from expressing any opinion upon it until it does properly arise, and the court has the benefit of full argument.

Several other errors are assigned.    The suggestions already made are deemed sufficient to guide the district court upon another trial.

The judgment and order are reversed, and the cause is remanded.

*Reversed and remanded.*