[Criminal No. 304. Filed October 9, 1912.]

[127 Pac. 742.]

## PLENNIE STOKES, Appellant, v. TERRITORY OF ARIZONA, Respondent.

1. CRIMINAL LAW—APPEAL—OBJECTIONS BELOW—NECESSITY—ERROR.— Irregularities in the drawing and impaneling of the grand and trial juries, not fundamental in their character, raised for the first time on appeal, cannot be considered.

2. CRIMINAL LAW—APPEAL—PRESUMPTIONS.—Where no challenge to either jury appears in the record, the supreme court will presume that all irregularities in the drawing and impaneling thereof were waived by the defendant when he entered his plea of not guilty.

3. HOMICIDE—EVIDENCE—SELF-DEFENSE—THREATS.—In a homicide case where there is any evidence that defendant acted in self-defense, although the main defense was that the killing was accidental, evidence of previous threats by the deceased should be admitted to show who was probably the aggressor, since, by Penal Code of 1901, section 882, allowing accused, under the plea of not guilty, to give

evidence of any facts tending to establish a defense, except former conviction or acquittal and former jeopardy, a defendant is not limited to consistent pleas.

**4.** HOMICIDE—RESISTING ARREST.—In determining the culpability of a homicide committed in resisting arrest, the fact, and not the information of the slayer, as to its legality is the test of the propriety of the means used to effect the arrest and to resist it.

**5.** HOMICIDE—EVIDENCE—ARREST—FELONIES.—In a prosecution for the killing of an officer, while accused was resisting arrest, evidence *held* to show that deceased had not sufficient grounds to believe that a felony had been committed, so that instructions based upon the hypothesis that the arrest was lawful without a warrant were erroneous.

**6.** HOMICIDE—ACCIDENTAL KILLING—"ACCIDENT."—The word "accident" used in Penal Code of 1901, sections 24 and 179, defining excusable homicide, is used in its general sense and meaning, and when used to express a result produced by human action is generally, if not universally, understood to mean a thing done or disaster caused or produced without design or intention; hence an instruction in a murder case that, if defendant shot the officer while unlawfully resisting arrest, then the shooting, though accidental, was murder in the second degree was erroneous as allowing conviction of murder in the absence of intent.

**7.** CRIMINAL LAW—INSTRUCTIONS—GRADES OF OFFENSE.—The trial court must clearly define the grades of the offense, included in the indictment, of which the accused, under the evidence, may be convicted.

**8.** HOMICIDE—DEFINITION — SECOND-DEGREE MURDER.—It is reversible error for the court to define murder of the second degree in the words of the statute alone.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Gila. E. W. Lewis, Judge. Reversed and remanded.

STATEMENT OF FACTS BY THE COURT.

The appellant was indicted by the grand jury of the county of Gila for the murder of Charles S. Woods, alleged to have been committed on January 9, 1910. He was convicted of murder of the first degree, with the death penalty affixed, and sentenced accordingly. From the judgment of conviction, and from an order overruling his motion for a new trial, he appeals.

On the night of January 9, 1910, the appellant was in the house of Daisy Walker, a house of ill-fame, in the town of

Miami, at the invitation of one Jean Elliott, an inmate of the house, in the room occupied by the girl. Some kind of a disturbance took place in the room, but the nature of which the testimony does not disclose. The appellant was under some suspicion that he was connected with this disturbance, and that the girl was in some manner receiving ill-treatment. The testimony tended to show that she "was washing the blood off" when the deceased came to the door, and one other of the girl inmates threatened to call an officer if appellant did not "let the girl alone," and Jean Elliott stated this was said to him because "he was beating me, and she told him to stop." About ten minutes after the girl had been at the room, the deceased came and knocked on the door and demanded to be admitted, for the reason, as he stated, he was an officer, and if the door was not opened he "would kick it in." The door was opened, and the officer stood on the threshold and asked the girl, "What is the matter, Jean?" To which she replied, "Nothing in the wide world," and this was repeated. Appellant was unarmed, sitting in a chair, near the foot of the bed, with his coat off, and a friend, Archie Owen, was in the room. The officer was further informed by Jean Elliott that the boys were doing nothing, and she had previously informed the two girls there was no need of the services of an officer, and she continued to insist that no officer was needed at the room.

When the deceased inquired, "What is the matter?" and had received her answer that there was no trouble, the deceased, who was an officer, said to appellant and Archie Owen, "I'll take both of you fellows." Owen stood up, and he was commanded to sit down, and then deceased said to appellant, "I'll take you," and commanded him to "come on." To this appellant answered, "I don't think you will," and at the same time he sprang at deceased, "grabbed" him, and pushed him back through the door, and when they were both in the hall the girl closed the door.

The appellant had no weapons of any kind, and the officer was armed. There was some testimony tending to show that the officer was attempting to draw his pistol. They scuffled but a moment and fell to the floor, when the officer's pistol dropped on the floor—whether by his pulling it from the scabbard or otherwise does not appear—and deceased called

to others standing near to "get the gun"; but defendant got the gun, and about that time the officer said, "I'll give up," or, "I'll quit," or words to that effect. The appellant began to get to his feet when the fatal shot was fired, taking effect to the left side of and about an inch from the nose, passing through the upper jawbone and entering the skull, which caused the death. The face was powder burned. The defendant had the pistol in his hand when it was discharged.

The defendant claimed the discharge was accidental, and the testimony of the witnesses is conflicting on that fact. The testimony is not in harmony as to the position of defendant's body in reference to the deceased when the shot was fired; but one witness testified that the defendant aimed the pistol and fired after defendant was standing on his feet, free from the deceased. The other witnesses testify that the shot was fired as defendant was getting on his feet, and after deceased had stated he would quit, and in part were corroborated by appellant. Appellant testified the struggle commenced when the deceased made a motion as if to draw his pistol; and it was to prevent the drawing of the pistol and enforcing the threat to arrest him that he clinched with the officer. The deceased stated to his wife, in answer to her question, "How did it happen?" that defendant "shot me after I gave up."

On the question of calling an officer, the woman in charge of the house states she heard no disturbance in the room, but was requested by one of the girls to call an officer, and one of the other girls did call an officer from a saloon near by. The evidence does not disclose what charge, if any, was made by any person to the officer, other than that a disturbance had been created in the room of Jean Elliott, for the quelling of which an officer had been called. The testimony discloses that at the time of the homicide the deceased was a regular deputy sheriff stationed at Miami, and that appellant knew him, and knew he was such an officer.

The grand and trial juries were drawn and summoned in a manner claimed by appellant as irregular; but the cause was tried upon the plea of not guilty. No challenge was made to the panel of the jury or otherwise.

Messrs. Kibbey, Bennett & Bennett, for Appellant.

Mr. G. P. Bullard, Attorney General, for Respondent.

CUNNINGHAM, J.—Appellant assigns error upon alleged irregularities in the drawing and impaneling of the grand jury that returned the indictment, and in drawing and impaneling the trial jury. No challenge to either jury appears in the record, but the defendant entered his plea of not guilty, and the trial was had upon the issues thus raised.

The irregularities complained of are not fundamental in their character, and are raised for the first time in this court; therefore the objection comes too late for consideration. Furthermore, this court will presume, under such state of circumstances, that all such irregularities were waived by the defendant when he entered his plea of not guilty. Pen. Code Ariz., 1901, par. 797; *Ex parte Wilson,* 140 U. S. 575, 35 L. Ed. 513, 11 Sup. Ct. Rep. 870; *Montgomery* v. *State,* 3 Kan. 263; *Thomas* v. *Territory,* 11 Ariz. 184, 89 Pac. 591; *Hoyt* v. *Territory, ante,* p. 161, 126 Pac. 267, decided July 11, 1912.

Appellant complains of errors committed upon the trial in the admission of testimony, which we deem unnecessary to consider in a disposition of the case. If error was committed on that trial, we presume it will not occur again on a new trial.

The appellant offered testimony of a prior recent altercation between appellant and deceased, and of threats made by deceased to kill appellant, avowing that such testimony was offered for the purpose of showing who was probably the aggressor in the fatal altercation, and bearing on the mental state of the parties at the time of such altercation. The court rejected the offer until appellant would show more clearly its relation to his defense, stating that if the testimony was offered in support of the plea of self-defense it might be received for that purpose, but if the defense relied upon was that of accidental shooting it would have no relevancy, and would be rejected. Counsel for appellant insists this ruling had the effect of forcing the defendant to an election of defenses, upon which is based the fifth assignment of error.

Under a plea of not guilty, accused, in a criminal case, may give in testimony all matters of fact tending to establish any defense he may have, other than former conviction or acquittal and former jeopardy, which must be specially pleaded. Pen. Code Ariz. 1901, par. 882. He is not limited to consistent pleas under this broad statute. On a retrial of this

case, should any evidence be brought out showing that defendant was acting in self-defense, the offer of previous threats by deceased should be allowed.

The eighth and ninth assignments of error attack certain of the instructions of the court and allege error in the failure of the court to instruct upon certain phases of the case as presented by the evidence, and these questions merit serious consideration.

The appellant complains of the following instructions:

"I charge you, as a matter of law, that a deputy sheriff of Gila county and territory of Arizona is a peace officer, and as such peace officer may make an arrest without a warrant, when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; and that he can make such arrest, under such circumstances, at night.

"I further charge you, as a matter of law, that an aggravated assault is an assault committed by an adult male upon the person of a female. An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another. An aggravated assault is a felony.

"Therefore, gentlemen, if you find from the evidence. beyond a reasonable doubt, that the defendant, Stokes, was committing an aggravated assault, or had committed an aggravated assault, on the person of the witness Jean Elliott, a female, on the night of January 9, 1911, and that the decedent, Woods, was a peace officer at that time, and that he (Woods) had reasonable cause for believing that the said Stokes had committed such a felony, then I charge you that said Woods had a lawful right to arrest the said Stokes during the night without a warrant.

"No particular form of word is necessary in the notification by an officer to a person sought to be arrested of his authority and the grounds of the arrest. The information is sufficient if it was such as to give the accused person an opportunity to submit in an orderly and peaceable manner to the arrest, and such that he knows, or, as a reasonable man, ought to know, that his arrest is intended.

"If you find from the evidence, beyond a reasonable doubt, the facts heretofore enumerated as constituting lawful arrest

existed, and that such notice was given, then the arrest or attempt to arrest was lawful, and resistance thereto was unjustifiable, provided you further find from the evidence that the defendant, Stokes, knew at the time, or ought, as a reasonable man, to have known, that the decedent, Woods, was a peace officer.

"If you find, under the instructions given, that Woods was a peace officer, lawfully endeavoring to arrest, or had lawfully arrested, Stokes, and that Stokes was willfully resisting such arrest, knowing Woods to be an officer, then I charge you, as a matter of law, that such resistance was a felony. And if you further find from the evidence that the defendant, Stokes, shot the officer, Woods, while so unlawfully resisting arrest, then the shooting, even though accidental, is murder. Such murder would be murder of the second degree. If, however, you are not satisfied by the evidence, beyond a reasonable doubt, of the existence of these facts constituting a lawful arrest, or that the defendant, Stokes, knew that Woods was an officer at the time of the arrest, or that he was willfully resisting arrest, then I charge you that, even though you should find he was resisting arrest, if you further find that he shot the deceased by accident, he would not be guilty of murder, but you should consider whether or not he is guilty of involuntary manslaughter.

"If you believe from the evidence, beyond a reasonable doubt, that the defendant, Stokes, killed the deceased in the commission of an unlawful act not amounting to a felony, by accident, you should find him guilty of involuntary manslaughter. Or, if the evidence raises in your mind a reasonable doubt as to whether this was the situation under which the killing occurred, you should give the defendant the benefit of that doubt as against the higher degree of the crime, and find him guilty of involuntary manslaughter."

In determining the culpability of a homicide committed in resisting a supposed unlawful arrest, the lawfulness of the arrest, and not the information of the slayer respecting its legality, is the criterion, in connection with the character of the means used to effect the arrest, upon the one hand, and those used to resist it upon the other. 9 Am. & Eng. Ency. of Law, 1st ed., 609; *Alford* v. *State,* 8 Tex. App. 545.

The facts shown in the testimony are not sufficient to induce a reasonable belief that a felony had been committed, nor

that appellant was probably guilty of any felony. But, on the other hand, the testimony conclusively shows that no charge was laid before the officer that a felony had been committed by appellant or by any person. The appearances in the rooms were not sufficient to induce a reasonable belief that a felony had been committed by appellant or by any person.

The effect of the instruction given is to charge the jury that the evidence was sufficient to warrant a finding that the arrest was lawful, and in resisting the defendant was committing a felony. A verdict of guilty upon a trial on an indictment charging the appellant with having committed an aggravated assault upon the person of Jean Elliott would not have been permitted to stand, when no more evidence was produced by the prosecution than was produced in this case upon that point. No offense was shown—no *corpus delicti* was established. The defendant was entitled to a proper instruction defining the law of his rights on this state of facts presented, and such was not accorded him. The instructions of the court were based upon the hypothesis that the arrest was a lawful arrest, and the resistance thereto by the appellant was unlawful. Such theory had no support in the evidence.

The word "accident" used in the statutes (Pen. Code Ariz. pars. 24 and 179) is used in its general sense and meaning, and when so used to express a result produced by human action is generally, if not universally, understood to mean a thing done or disaster caused or produced without design or intention. *The Blue Wing* v. *Buckner,* 51 Ky. (12 B. Mon.) 246–250.

The trial court, in the use of the word "accident" in its instructions to the jury, must be considered to have used the word in its usual sense and meaning; and the jury must be presumed to have understood the meaning of the word in that sense, when the court instructed the jury: "And if you further find that the defendant, Stokes, shot the officer, Woods, while so unlawfully resisting arrest, then the shooting, even though accidental, is murder . . . of the second degree." That was, in effect, instructing the jury that, if they should find that the defendant shot the officer while unlawfully resisting arrest, then the shooting, even though he had no design to shoot nor intention to shoot, nevertheless is murder in the second degree because of the unlawful resistance to the threat-

ened arrest. The charge was wrong in two aspects of this case: First, because the facts would not warrant the jury in finding a lawful arrest, and therefore finding the resistance thereto an unlawful resistance to arrest; and, second, because, before a homicide can be murder of either the first or of the second degree, the intent to take life must be present, and this instruction warrants conviction of murder in the absence of such intent.

The court in its instructions should declare fully the law upon every degree of homicide of which the accused could be convicted, which is supported by evidence. *State* v. *Baker,* 13 Mont. 160, 32 Pac. 647; 21 Cyc. 1065, notes 39, 40, and Id., 1063, note 26.

It is the duty of the trial court to clearly define the grades of the offense included in the indictment of which the accused, under the evidence, may be convicted. Under the indictment and the evidence in this case, the accused could have been convicted of any degree of homicide, or acquitted.

The definition of murder of the second degree, given by the court, was certainly open to doubt of its accuracy. This grade of the offense was defined almost as briefly as, and nearly in the words of, the statute; and respectable authority exists to the effect that it is reversible error to define murder of the second degree in the words of the statute such as ours. *State* v. *Baker, supra; State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.

The court gave no instructions presenting the phases of the testimony applicable to voluntary manslaughter, excusable homicide, justifiable homicide, nor inevitable accident or misfortune; nor did the court instruct the jury upon the phase of the case presented, assuming the arrest or attempted arrest to have been unlawful and without legal authority; and, in the absence of such instruction, we deem substantial rights have been denied appellant from which we presume he has suffered material injury.

For which errors in the instructions as given and the failure of the court to instruct as intimated above, the judgment of the trial court is reversed and vacated, and the cause is remanded to the superior court of the state of Arizona, in and for the county of Gila, with directions to that court to grant the defendant a new trial.

FRANKLIN, C. J., and ROSS, J., concur.

NOTE.—For authorities on the question of evidence of antecedent threats, see note in 3 L. R. A., N. S., 523.

The question of homicide in resisting arrest, or of officers of justice, is treated in an exhaustive note in 66 L. R. A. 353, and in supplemental notes in 5 L. R. A., N. S., 1016, and 33 L. R. A., N. S., 143.

As to the right of a policeman to make, and of a citizen to resist, arrest, see note in 84 Am. St. Rep. 679.

As to the law of self-defense, see notes in 109 Am. St. Rep. 804; 74 Am. St. Rep. 717; and as to the burden of proof on the issue of self-defense, see note in Ann. Cas. 1912C, 47.