[Criminal No. 465.   Filed December 18, 1918.]

[176 Pac. 579.]

## HARRY EARL STEPHENS, Appellant, v. STATE, Respondent.

1. JURY—OPINION OF JUROR.—Juror, who had both formed and expressed a fixed and unqualified opinion as to defendant's guilt, upon being challenged, should have been excused by the trial court, under Penal Code of Arizona of 1913, section 1025, in view of section 1023, subdivision 13, and notwithstanding section 1024.

2. CRIMINAL LAW—INSTRUCTIONS—UNDUE PROMINENCE TO PARTICULAR FACTS.—In murder prosecution, defended on ground of temporary insanity, instruction that jury, in determining whether defendant was overcome by sudden passion upon seeing deceased, should consider, if it found such facts, that defendant on that day attended to business affairs rationally, and immediately before and after homicide was observed to be calm and unconcerned, was improper, giving undue prominence to particular facts.

3. CRIMINAL LAW—INSTRUCTIONS—COMMENT ON EVIDENCE.—In murder prosecution, defended on ground of emotional insanity, instructions as to facts to be considered in determining whether defendant was overcome by sudden passion at moment of homicide *held* a comment upon the evidence and its weight.

4. HOMICIDE — INSANITY — ARGUMENTATIVE INSTRUCTIONS.—In murder prosecution defended on ground of emotional insanity, instructions as to defendant's mental and physical condition *held* argumentative.

5. HOMICIDE — INSTRUCTIONS — DEGREES OF HOMICIDE.—In prosecution for murder, the court in its instructions should declare fully the law upon every degree of homicide of which the accused could be convicted which is supported by the evidence.

6. HOMICIDE—INSTRUCTIONS—MURDER IN SECOND DEGREE.—In prosecution for murder in first degree, defended on ground of emotional insanity, an instruction, defining "murder of the second degree" as the unlawful killing of a human being without malice aforethought and without deliberation or premeditation, was error in view of Penal Code of Arizona of 1913, section 170, defining "murder."

[As to classification of mental attitude reducing homicide to manslaughter, see note in 134 **Am. St. Rep.** 727.]

APPEAL from a judgment of the Superior Court of the county of Yavapai. John J. Sweeney, Judge. Reversed and remanded for new trial.

Messrs. O'Sullivan & Morgan and Mr. A. C. Baker, for Appellant.

Mr. Wiley E. Jones, Attorney General, Mr. F. L. Haworth, County Attorney, Mr. P. M. Ling, Deputy County Attorney, and Mr. E. S. Clark, for the State.

JOHN WILSON ROSS, J.—An information was filed against the appellant on the thirtieth day of April, 1918, in the superior court of Yavapai county, Arizona, charging him with the crime of murder in the first degree, in the killing of one A. R. Miller, a human being, on or about the second day of April, 1918. After a trial lasting several days, the jury returned a verdict on July 19, 1918, finding appellant guilty of murder of the first degree. On the twenty-fifth day of July, 1918, the court rendered judgment of conviction and sentenced appellant to imprisonment in the state prison at Florence, Arizona, for the period of his natural life. This is an appeal from the judgment and from the order of the trial court overruling appellant's motion for a new trial.

Appellant specifies seven assignments of error, but we will consider and dispose of in their order only three of appellant's assignments of error, and they are: Assignment of error No. 3, assignment of error No. 4, and assignment of error No. 5.

Appellant's assignment of error No. 3 is to the effect that Juror C. E. Lady had both formed and expressed an unqualified and fixed opinion as to appellant's guilt, and that at the time of his examination on *voir dire* he entertained the same unqualified and fixed opinion. Juror Lady was examined upon his *voir dire* and challenged, and the challenge was disallowed. Defendant exercised his peremptory challenge to Juror Lady, and also exercised all his other peremptory challenges. On his *voir dire* he testified, in substance, as follows: "From what I have heard and read, I have formed an opinion. If chosen as a juror, I would try the case by the law and the evidence and in accordance with what transpired in court. At the time of the homicide, I read newspaper accounts, in the Journal Miner. I made up my mind as to whether the defendant was guilty or not guilty. I expressed an opinion as to whether he was guilty or not guilty. I have the same opinion at this time, gained from newspaper accounts and with talking with three or four different parties. I have the same opinion now that I formed and expressed as to whether the defendant was guilty or not guilty, and it has not changed a bit. My opinion is a decided opinion, one that is already formed and settled, as far as the condition of my mind is at the present time. If I were chosen as a juror, I would be guided entirely by the evidence and not by this opinion I now have."

The declaration of rights in our Constitution provides that the accused in criminal prosecutions shall have a speedy public trial by an impartial jury. Such safeguards are essential for the perpetuation of free government, and it is the duty of the courts to see to it that a speedy public trial by an impartial jury be granted to every person accused of crime, and to do so without fear or favor.

Section 1023 of the Penal Code of Arizona of 1913 provides that either party may challenge any individual juror for any of the causes mentioned in the 15 subdivisions of said section. The thirteenth subdivision of said section provides as a cause for such challenge:

"For the existence of a state of mind on the part of the juror in reference to the case or to the defendant or to the person alleged to have been injured by the offense charged, or on whose complaint the prosecution was instituted, which

will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party."

Section 1024 of the Penal Code provides:

"When a challenge is made for the cause mentioned in subdivision 13 of the preceding section, the fact that a person called as a juror has formed an opinion or impression based upon rumor, or upon newspaper statements (about the truth of which he has expressed no opinion) shall not disqualify him to serve as a juror in such case, if he shall upon oath state that he believes he can fairly and impartially render a verdict therein, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement."

Section 1025 of our Penal Code provides:

"The court shall instruct the jurors as to the distinction between a qualified and unqualified opinion, and if the person has formed or expressed an unqualified opinion he shall be excluded."

Juror Lady had both formed and expressed to others a fixed and unqualified opinion, and, according to the Penal Code, section 1025, *supra,* it was the duty of the trial court to have excused the said juror because a good ground of challenge was interposed.

Illinois has a statute very similar to section 1024, *supra,* and the supreme court of the state of Illinois has passed upon and construed such statute. Among other provisions in the Illinois statute (Hurd's Rev. Stats. 1917, c. 78, § 14) is found the following:

"Provided, further, that it shall not be a cause of challenge that a juror has read in the newspapers an account of the commission of the crime with which the prisoner is charged, if such juror shall state, on oath, that he believes he can render an impartial verdict, according to the law and the evidence: and, provided, further, that in the trial of any criminal cause, the fact that a person called as a juror has formed an opinion or impression, based upon rumor or upon newspaper statements (about the truth of which he has expressed no opinion), shall not disqualify him to serve as a juror in such case, if he shall, upon oath, state that he believes he can fairly and impartially render a verdict therein, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement."

The Arizona statute and the Illinois statute being similar, what the supreme court of the state of Illinois has decided ought to be a guide in the construction to be placed upon the statute under consideration.

Our supreme court has also construed section 1024, *supra.*

In *Coughlin* v. *People*, 144 Ill. 140, 19 L. R. A. 57, 33 N. E. 1, the court, after a thorough and learned discussion as to when a juror ought to be excused when challenged on his *voir dire*, says:

"But the holding of this and other courts is substantially uniform that, where it is once clearly shown that there exists in the mind of the juror, at the time he is called to the jury box, a fixed and positive opinion as to the merits of the case, or as to the guilt or innocence of the defendant he is called to try, his statement that, notwithstanding such opinion, he can render a fair and impartial verdict, according to the law and the evidence, has little, if any, tendency to establish his impartiality. This is so because a juror who is shown to have in his mind a fixed and positive opinion as to the guilt or innocence of the accused, is not impartial, as a matter of fact, to say nothing of those legal conclusions which formerly prevailed, and which would still prevail, if the statute were not in existence. His statement that he can render a fair and impartial verdict does not tend to show that he is not partial, since it does not tend to show the nonexistence of the fixed and decided opinion. . . . It merely tends to show that the juror, while admitting that he has prejudged the prisoner's case, believes in his ability to act as though he had not done so, or that, while admitting his actual partiality, he believes in his ability to act as though he were impartial. It being constantly kept in mind that the fact to be proved by the juror's answer is that he is impartial, in the constitutional sense of the word, it is difficult to see how, after a juror has avowed a fixed and settled opinion as to the prisoner's guilt, a court can be legally satisfied of the truth of his answer that he can render a fair and impartial verdict, or find therefrom that he has the qualification of impartiality, as required by the Constitution."

We conclude that a person who has formed and expressed an unqualified and fixed opinion as to the guilt or innocence of the accused in a criminal case is disqualified to serve as a juror in such case. As shedding light upon and in support

of our conclusion, we cite the following cases: *Leigh* v. *Territory,* 10 Ariz. 129, 85 Pac. 948; *Tegeler* v. *State,* 9 Okl. Cr. 138,· 130 Pac. 1164; *People* v. *Cottle,* 6 Cal. 227; *People* v. *Edwards,* 41 Cal. 640.

Appellant's assignment of error No. 4 complains that the court committed prejudicial error in charging the jury with respect to the matters of fact, and in commenting thereon, in direct violation of section 12, article 6, of the state Constitution of Arizona, and in giving argumentative instructions and instructions on the weight of the evidence; said instructions being as follows:

"You are instructed that even though you may find from the evidence that the defendant, on the day before, and in the forenoon of the day of the homicide, manifested at times nervousness and emotion, yet, if you also find from the evidence that during all this time he attended to business affairs normally and rationally, and that his conversations were sensible and his demeanor self-possessed, and that immediately before the homicide he was observed to be calm, and that immediately after the homicide he was cool and unconcerned and conversed with his friends without unusual manifestation, that no predisposing cause of insanity have been shown, and that no witness, expert or nonexpert, has·testified directly to a belief in his insanity, at the time of the homicide, then I charge you that such circumstances should be considered by you in determining whether the defendant's plea that at the moment of the homicide he was overpowered by sudden passion upon merely seeing the deceased is reasonable, and whether at the moment of the shooting the defendant was capable of distinguishing right from wrong.

"You are instructed that if you find from the evidence that the defendant had been aware for some time prior to the homicide that his mother intended to separate from Joe Stephens, the father of the defendant, and that the defendant himself had been guilty of conduct toward his mother which might tend to influence her to leave her home, and that on the Sunday night preceding the homicide the defendant had joined with his father in abusing and applying vulgar and obscene charges against defendant's mother, and you further find from the evidence that the defendant had met the deceased once or more than once between the time he was informed that his mother intended to go away with

Miller and the time of the homicide, then the defendant cannot avail himself of the plea that he was roused to such sudden passion, upon seeing the deceased at the time of the homicide, that he was irresponsible. That is to say, that if you find that the acts and conduct of defendant himself contributed to the intention formed by his mother to leave home, if you find that she had formed such intention, then he was in some degree at least responsible for the situation, and this weakens the defendant's claim that he shot the deceased in a moment of overwhelming anger, even though you may also believe the deceased was also to some extent responsible.

"If you find from the evidence that the defendant and the deceased had met and passed after defendant had learned that his mother intended to leave her husband, and before the time of the final meeting at which the homicide occurred, then I charge you that the opportunity for deliberation and reflection was so great as to render it less probable that the homicide occurred upon a sudden impulse than upon premeditation."

In the foregoing instructions the court committed prejudicial error. The instructions single out and give undue prominence to particular facts; they inject into the case and present to the jury matters for consideration not proved by any witnesses; they comment upon the evidence; they instruct the jury as to the weight of the evidence, and they are highly argumentative; they single out the testimony as to defendant's mental and physical condition; they specifically direct attention to the failure of the defendant to adduce expert or non-expert testimony as to his insanity.

"It was not within the province of the court to select one fact, and tell or suggest to the jury what effect they might give to it. The jury should consider all the evidence, and base their verdict upon their conclusions from it as a whole." *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900.

"The rule seems to be that, where an instruction is argumentative, and directs the attention of the jury especially to certain portions of the evidence, and suggests to them certain inferences of fact to be drawn therefrom—thus singling out for their consideration particular facts favorable to the defendant, and ignoring, by failing to particularize, other evidence having a contrary tendency—the giving of such an instruction is error." *State* v. *Jones,* 28 Idaho, 428, 154 Pac. 378.

We quote as directly in point, as condemning argumentative instructions, the following from *Griswold* v. *Horne,* 19 Ariz. 56, 165 Pac. 318, 326:

"We are content to say that it is wholly bad, and the giving of the instruction is disapproved because it is highly argumentative, and in its very nature calculated to confuse, mislead, and prejudice the jury. . . . Instructions should be limited to a plain, simple and direct statement of the law in order that the jury might intelligently apply the evidence that has been adduced before them."

An author says:

"The judge should hold the scales of justice equally, and not assume the character of the advocate. Argumentative instructions trench upon the province of the jury, and therefore should not be given, and the giving of them is error." 2 Thompson on Trials, par. 2301.

That the foregoing instructions constitute prejudicial error, in that they charge the jury with respect to matters of fact, comment upon the evidence, instruct as to the weight of the evidence, and give argumentative instructions, the following cases are cited: *Erickson* v. *State,* 14 Ariz. 253, 127 Pac. 754; *Babb* v. *State,* 18 Ariz. 505, Ann. Cas. 1918B, 925, 163 Pac. 259; *People* v. *Maughs,* 149 Cal. 262, 86 Pac. 191; *Brumbaugh* v. *State,* 11 Okl. Cr. 596, 150 Pac. 88; *Smith* v. *State,* 10 Okl. Cr. 45, 133 Pac. 1136; *Gilmore* v. *State,* 126 Ala. 20, 28 South. 595.

Appellant's assignment of error No. 5 complains that the court committed gross prejudicial error in misdirecting the jury in its definition of what constitutes murder of the second degree, in that the court charged that murder of the second degree is the unlawful killing of a human being without malice aforethought, and without deliberation; that the elements of murder in the second degree are wanting, and the charge in fact contains the elements of manslaughter; and that, by reason of such erroneous instruction, appellant was denied the right to have a jury pass on the elements constituting murder of the second degree.

The exact wording of the instruction given by the court in his effort to define "murder in the second degree" is as follows:

"The court instructs the jury that murder of the second degree is the unlawful killing of a human being without

malice aforethought, either express or implied, and without deliberation or premeditation.''

Section 170, Penal Code of Arizona, provides:

''Murder is the unlawful killing of a human being with malice aforethought.''

This definition includes either murder of the first or second degrees. Under the information and the evidence in the case at bar, the accused could have been convicted of any degree of homicide or manslaughter.

''It requires no discussion of murder in its various grades to show that the instruction relating to murder of the second degree was a positive misstatement of the law. It was suggested at the oral arguments of counsel for the state that this was a clerical error; but in cases of this kind, where a court seeks to instruct the jury on matters of law, if a clear misstatement of the legal principle appears, the fact that it is a clerical error will not relieve the injuries that might accrue therefrom. It might be contended that by other instructions given by the court, the law was correctly stated. This court, as well as other courts, has repeatedly held that where a record in a criminal case shows that the court differently defined the law upon any given subject, one clause being correct, the other erroneous, that injury must be presumed to follow from such a state of facts, unless the record clearly shows that no injury resulted therefrom.'' *State v. Scott,* 37 Nev. 412, 142 Pac. 1053.

''It is the duty of the trial court to declare the law applicable to every phase of the case that the jury may consider the evidence with the full knowledge of every essential element of each grade of crime of which the defendant may be convicted. . . . Ordinarily, they have not experience and knowledge sufficient to enable them to draw nice distinctions necessary in the application of legal principles, and, unless the court comes to their assistance and declares these distinctions so that they may understand and apply them, they are left to grope in confusion and uncertainty. . . . The court nowhere told the jury that murder of the second degree is the unlawful killing of a human being with malice aforethought, but without deliberation.'' *State v. Shafer,* 26 Mont. 21, 66 Pac. 464.

The court in its instructions should declare fully the law upon every degree of homicide of which the accused could

be convicted, which is supported by the evidence. *Stokes* v. *Territory,* 14 Ariz. 250, 127 Pac. 742; *State* v. *Baker,* 13 Mont. 162, 32 Pac. 647; 21 Cyc. 1065.

It is clear that the trial court committed prejudicial error in misdirecting the jury as to what constituted murder of the second degree.

Other assignments of error are based upon erroneous procedure; but, in view of a new trial, error, if any, in the lower court, we assume, will not be committed again.

The judgment of the lower court is reversed, and the cause is remanded, with directions that appellant be granted a new trial.

CUNNINGHAM, C. J., and ROSS, J., concur.

On the question as to opinions gained from newspapers as disqualification of juror in criminal case, see comprehensive note in 35 L. R. A. (N. S.) 985.