## LAWSON VS. THE STATE.

1. EVIDENCE: *Admission of co-conspirator, etc.*

The admission of one of several conspirators, in the absence of the others, is admissible in evidence against them, if made during the progress and in furtherance of the common design, but it is necessary that the State should, first lay the foundation for such evidence by proof of the conspiracy, unless the court in its discretion under peculiar and urgent circumstances, should dispense with the prior proof of the conspiracy, upon the undertaking of the State to produce it afterwards.

2. ————: *Of previous reputation for truth and morality.*

Evidence of the reputation of a witness for truth and veracity two years prior to the time of the trial, and at a different place, is admissible for the purpose of impeaching him.

APPEAL from *Cross* Circuit Court.

Hon. P. DUNN, Special Judge.

*Attorney General,* for the State.

HARRISON, J.:

The appellant, Sam. Lawson, was indicted with one Andy Lawson, for grand larceny.

The property charged to have been stolen, were two hogs belonging to William R. Sanders, of the value of $15, each. He was tried separately, and convicted.

Nancy Hunt, a witness for the State, testified: That the defendant and Andy Lawson came to her husband's house in the evening, shortly after dark, and called him out; they had some conversation which she did not hear, after which he returned into the house, and asked her if she was afraid to stay by herself awhile. She told him she was not afraid, and inquired where he was going; he replied, he was going with those boys to get some meat. She told him, he would get into trouble, and entreated him not to go. He would go; and in about a half an hour they returned, bringing with them two hogs, which she heard Andy

Lawson say, in the presence of the defendant, belonged to William R. Sanders, and which she of her personal knowledge knew to be his. This was in Cross County, and some time in 1875. Witness had testified before the examining court.

The defendant, at the time and before she had testified to what subsequently occurred, objected to her stating anything said to her by her husband, in his absence; but the court overruled the objection, and permitted her statement of what was so said to go the jury.

The declarations of one of several persons, who have conspired to commit an unlawful act, if made during the pendency of such enterprise, and in furtherance of its object, are admissible as evidence against the others, though made in their absence. Ordinarily, however, a foundation must first be laid by proof sufficient to establish *prima facia,* or proper to be laid before the jury, as tending to establish it, the fact of conspiracy between the parties.

Sometimes, however, in the discretion of the court, under particular and urgent circumstances, such declarations are admitted to go to the jury, before sufficient proof is given of the conspiracy; the State undertaking to furnish such proof afterward. Green. on Ev., sec. 111. The witness had stated, that the defendant and Andy Lawson had come to her husband's house after dark, and called her husband out, and had a conversation with him. If this was not a sufficient foundation for the admission of his declaration—in regard to which we express no opinion—her subsequent testimony as to what afterwards occurred, which if it had preceded her statement about what he told her, would have been a good foundation for their admission, made the competency of the declarations as evidence apparent, and the defendant could not possibly have been prejudiced by the admission of them before such foundation was laid.

The defendant called G. W. Lane, Henry Roberts and J. A. Winchell, who severally testified, that they were acquainted with the witness, Nancy Hunt, and being asked if they knew her reputation for truth and morality, answered that they did not know what it was at that time, she having removed from the neighborhood, where they resided, about two years before. They were then asked, what it was in the community she removed from at the time she left it, but the prosecuting attorney objected to the question, and the court refused to permit the witnesses to answer it.

By an express provision of the statute, sec. 2524, Gantt's Digest, a witness may be impeached by evidence, that his general reputation for truth or morality is so bad as to render him unworthy of belief. *Majors* v. *The State*, 29 Ark., 112.

In the case of *Snow* v. *Grace.* 29 Ark., 131, it was decided, that witness' reputation for truth in the community, where he resided seven years before, whilst living there was admissible. The opinion in that case contains a very full and elaborate review of the authorities bearing upon the subject. Mr. Special Justice Williams, who delivered it, said: "It will be thus seen, that the authorities are in conflict on this question. It seems to us, however, that the reputation a witness has for truth, is a mere circumstance; which the rules of law allow to be considered by the jury, to aid them in determining the degree of credit to be given the witness, and is purely a question of fact. If so, does not a reputation at some other time than that of testifying, and some other place than that of the then residence, equally tend to shed light upon the question of credit. The light may be dim and flickering on account of remoteness, but is it not still light? The remoteness of time and place are also circumstances and facts to which ordinarily, under proper instructions, the jury will give due weight. If this sort of testimony is to be admitted at all, it would be difficult to draw the

line, and say when it, the evidence of reputation, ceases to be fact, and becomes a question of law." "Doubtless there are cases," he continued, "in which the testimony would be too remote as to time, and the court in its discretion, might exclude it, as in the case cited from 2 Howard (*Teese* v. *Huntingdon*). Its exclusion in that case, rested in the sound discretion of the court, so held."

In the case of *Teese* v. *Huntingdon*, referred to by Judge Williams, the trial took place and the witness was called in October, 1857, and he testified, that he knew the witness sought to be impeached during the years 1852 and 1853, in the city where they resided.

In this case. the time when the witness lived in the neighborhood of the persons called to impeach her credibility, was sufficiently recent and proximate, that the reputation she then bore for truth and morality, was, we think, a fact so clearly tending to prove the degree of credit her testimony was entitled to, as to exclude any discretion in the court as to its admission, and their knowledge concerning it, should have gone to the jury for what it was worth.

It was error in the court, to refuse to allow the witnesses to answer the question asked, for which its judgment must be reversed, and the cause remanded, that the defendant may have a new trial.