## WORLEY *v.* THE STATE.

1. Under the evidence in the case the court did not err in refusing to charge upon the subject of voluntary or involuntary manslaughter.

2. The court gave to the jury the following charge: "If you should find, for instance, in this case that these defendants, or either of them, if they were acting jointly, delivered upon the person named in the indictment a blow with a deadly weapon which produced death, and there was no provocation, no sufficient provocation, provocation sufficient enough to reduce it to some other offense, nor justification, and the person named in the indictment died in consequence of that blow, delivered under those circumstances by that character of weapon, that, under the law of Georgia, would be murder." This does not afford the defendant ground for a new trial; although, in view of the ruling above made that neither the law of voluntary nor involuntary manslaughter was involved in the case, the instruction just quoted is somewhat inapt, because it embodies the unnecessary expression "provocation sufficient enough to reduce it to some other offense."

3. It is unnecessary to pass upon the exception relative to the alleged disqualification of a named juror.

4. The court erred in admitting, over objection duly made, evidence of the character of the decedent for peaceableness, no evidence having been introduced by the defendant on trial putting the decedent's character in issue.

JUNE 13, 1912.

Indictment for murder. Before Judge Charlton. Chatham superior court. January 29, 1912.

*Robert L. Colding* and *Denny & Wright,* for plaintiff in error.

*Thomas S. Felder, attorney-general,* and *Walter C. Hartridge, solicitor-general,* contra.

BECK, J. John Worley and Hugh Boggs were jointly indicted for the murder of Jasper Turner. Worley was put upon trial and convicted of the offense of murder, and a recommendation was made by the jury that he be imprisoned for life in the penitentiary. The defendant thereupon made a motion for a new trial, which was overruled.

The State introduced evidence tending to show that the homicide was wilful and unprovoked murder, committed by the defendants

for the probable purpose of securing possession of an automobile which belonged to the decedent and which they had hired for the evening, ostensibly for the purpose of taking a ride into the country, the decedent acting as chauffeur. The State having exercised its right to sever, and Worley being on trial, Boggs, the other defendant, was introduced as a witness by the defense. According to his testimony he and Worley came to Savannah upon an excursion. They were in and about Savannah several days. On the day of the homicide, July 31, 1911, desiring to take a ride in an automobile, they hired the car of the decedent and engaged him to carry them for a ride, for $2.50 an hour. After they had been riding for two hours on a country road, witness told the owner of the car they had gone far enough, and to turn back; at this point the defendants and the decedent engaged in a controversy as to the amount of fare due, the decedent insisting that they owed him $10, while they contended that only $5 was due. The witness emphatically stated to the decedent that he would not be robbed in that way; thereupon the decedent drew a pistol, pointed it at the witness Boggs, and then Worley hit the decedent with a hammer. Witness jumped from the car, and the decedent turned on Worley and both of them fell out of the car; decedent had Worley on the ground, and Worley called loudly for help; whereupon decedent started towards Boggs, who thereupon seized the hammer and hit his assailant over the head with it. Decedent had dropped the pistol in the car when Worley hit him. When the decedent turned from Worley, who was upon the ground, to assail Boggs, the latter hit at him twice, hit him a glancing blow first, and then, as decedent came on,'hit him again. The witness then stated how they placed the body of decedent in the car, started back to the city of Savannah with him, and then, finding him to be dead, became alarmed and started away from the city of Savannah, and finally placed the body in a well. The witness testified at length as to many other particulars and details tending to explain the conduct of himself and his joint defendant, which it is not necessary to set forth here. The defendant made a statement which, in so far as it is material to the issues made in the record, is substantially as follows: They hired Turner's automobile, as stated by Boggs, and went out on the country road. When the altercation as to the fare arose, as detailed by Boggs, and Boggs said "I will not stand

to be robbed like that," the decedent, Turner, said, "You will give me $10, or I will blow your brains out," and he drew a pistol and pointed it at Boggs; the defendant on trial thereupon, in order to protect himself and companion, picked up the hammer, which was in the bottom of the car, and hit Turner on the side of the head; the latter fell over and dropped the pistol in the car; the accused hit him because he thought he was going to shoot Boggs and then kill him, the defendant on trial. After Turner was hit, he turned round and grabbed Worley, and they fell out of the side of the car. "He and I rolled out of the car, and we struggled there on the ground. He commenced choking me, and reached his hands in his pocket like this (indicating), trying to get something out of his pocket. I hollered to Boggs to come and help me; and as he was coming the negro turned me loose and started after Boggs in a sort of crouching position; and when he got close to Boggs, Boggs hit him, it seems like a glancing blow, and, the negro still coming on, Boggs hit him again and the negro rolled on the ground." Worley further declared, "The negro had the pistol pointed at my partner, and I was afraid he was going to shoot us both." The statement continues with details relating to the disposition of the body and the reason for the flight.

1. The court did not err in refusing to charge the jury upon the subject of voluntary or involuntary manslaughter. If the defendant's statement and the testimony of the witness Boggs, who was jointly indicted with him, be true, the plaintiff in error was not guilty of any offense against the law. When he struck the decedent, he did it because, according to his statement and the testimony of his companion, Boggs, the decedent had a deadly weapon leveled at Boggs, and the defendant acted under the fear that the life of himself and his companion was about to be taken by the decedent, to whom they had given no other provocation for a deadly assault than by refusing to pay, as hire for a car, a sum which they insisted was greater than the amount which they had contracted to pay. Under these circumstances, the assault by the decedent upon the defendant Worley and Boggs was of a felonious character; and if Worley acted, when he struck the deceased, in defense of himself or his companion against such an assault, the blow was justifiable, and if that blow caused the death of Turner, the homicide was justifiable. If the blow stricken by Worley did

not cause the death of Turner, but left him with strength enough, after dropping the pistol, to make further assault upon Worley and to hurl him to the ground or to throw himself upon Worley after the latter had fallen upon the ground, and he desisted from the last attack only when Worley's cries for help brought his companion Boggs to his aid, and Boggs, as Turner approached him in a crouching position, struck him twice, the first blow being a glancing one, Boggs would have been justifiable in striking this blow, and, if death resulted from it, neither Boggs nor Worley would have been guilty of any offense. Or, if it could be held that Boggs, coming up in response to the cries for help from his companion, who was upon the ground and in the grasp of an assailant, who but a few moments before had tried to murder them, used more force than was necessary in repelling the attack of Turner, who approached him in a crouching position, and that this was done not to repel a felonious attack, inasmuch as Turner was then unarmed, and Boggs, having struck with more force than was necessary to repel the attack, was guilty of voluntary manslaughter, as death resulted from his last blow, still that would not render Worley guilty of voluntary manslaughter. For, according to the testimony of Boggs and the statement of Worley himself, Worley had done nothing more in the first instance than to strike in order to save his own and his companion's life, and then when he was on the ground, with the assailant on him, he had cried for help. If the one who came to his help under these circumstances, when attacked in turn by Worley's assailant, struck with more force than was absolutely necessary, Worley was in no way responsible for the violence of the blow and did not share in the guilt of the man who struck it, if there was any guilt at all upon the part of the latter.

The evidence for the State, largely circumstantial, tended to show an unprovoked murder. The statement of the defendant on trial and the testimony of his companion, Boggs, if they were to be believed, showed no acts upon this defendant's part that were not entirely justifiable; and the jury, therefore, were called upon to determine whether the defendant on trial was guilty of murder, or not guilty of any offense. And instructions upon the subject of voluntary manslaughter could find no proper place in the court's charge upon the real issues made by the evidence.

2. Error is assigned upon the following charge of the court:

"If you should find, for instance, in this case that these defendants, or either of them, if they were acting jointly, delivered upon the person named in the indictment a blow with a deadly weapon which produced death, and there was no provocation, no sufficient provocation, provocation sufficient enough to reduce it to some other offense, nor justification, and the person named in the indictment died in consequence of that blow, delivered under those circumstances by that character of weapon, that, under the law of Georgia, would be murder." Having shown- that the law of manslaughter was not involved in this case, the charge just quoted affords the plaintiff in error no ground of complaint because, after having charged as above quoted, the court "failed and refused to charge upon any theory of the case whereby provocation would be sufficient to reduce it to some other offense." For, as we have attempted to demonstrate, there was no evidence in the case tending to show that the defendant was guilty of any offense if he was not guilty of murder.

3.  It is unnecessary to determine the question raised in the ground of the motion based upon the alleged disqualification of a named juror, as this question will not arise upon the next trial. a reversal being granted upon another ground of the motion.

4.  Error is assigned in the motion for a new trial upon the ruling of the court admitting, over objection duly made, evidence of the good character of the decedent. The admission of this testimony was error, and it was of such a nature as to require the grant of a new trial. In the trial of a criminal case, it is the privilege, in the first instance, of the defendant to put in issue his own character, and under certain circumstances that of the deceased. But until the defendant takes the initiative and puts in issue the character of the deceased, it is not competent for the State to adduce evidence to prove the good character of the deceased for peaceableness, or in other respects. We do not think that proof of the attack by the deceased upon the defendant at the time of the homicide is sufficient to warrant proof of his peaceable character. Our attention has been called to one or two decisions laying down a contrary doctrine; but we think that the rule as we have stated it is the sounder rule. In the case of *Pound* v. *State,* 43 *Ga.* 129, it was said: "If the character of the deceased for violence is put in issue by the evidence offered for the accused, then the right to

rebut such evidence is invoked, as a matter of right; but only then, and not till then." And in that case it was held that it was error upon the part of the court below to admit, over objection by the prisoner, evidence of the character of the accused for violence and also of the deceased for peaceableness, the same not being in rebuttal. In the case just cited and from which the above excerpt is taken, there was evidence tending to show that the deceased was about to cross a fence for the purpose of making an assault upon the defendant with an ax; and in view of these facts the court laid down the rule which we have stated, and we are unable to find any case in this State changing or modifying it.

*Judgment reversed. All the Justices concur, except Lumpkin and Hill, JJ., dissenting.*

LUMPKIN, J. Conceding that the admission of the evidence of a witness as to the peaceable character of the deceased was erroneous, I do not think a reversal should result. It would not be advisable to enter into a full discussion of the evidence, as the case is to be returned for a new trial. Suffice it to say that the evidence showed a shocking case of murder. Testimony on behalf of the defendant showed that he and his comrade rode into the country in a hired automobile at night, killed the owner, sold the automobile, concealed their identity, and fled; and that at the time the deceased was killed, he had gotten out of the automobile on the ground and had no weapon then with him. As to these facts there was no real dispute, though the accused and his witness insisted that the deceased was the assailant. A single witness testified that "the general character [of the deceased] for peaceableness or violence was good, that his reputation was that of a peaceable, honest negro." To upset the verdict for this alone seems to me to be wrong. I am authorized to state that Mr. Associate Justice Hill concurs in this dissent.