## PHILLIPS *v.* THE STATE.

1. The remarks of the solicitor-general to the court, while insisting that certain testimony was relevant and material, and upon which counsel for the defendant based a motion for a mistrial, were not of such character as to prejudice the jury against the defendant, so ,as to require the grant of a mistrial or a rebuke of the solicitor-general by the court.

2. Nor did the court err in refusing to declare a mistrial, upon motion made by the defendant's counsel, because of repeated offers by the solicitor-general to prove the good character of the decedent, which had not been put in issue, after the court had ruled that such evidence was inadmissible.

3. Although the defendant's statement in part was that he heard the decedent, just before the shooting which resulted in the death of the latter, use to and of the wife of the defendant vile, opprobrious and insulting language, such as, "I will kill you, you damn bitch," it was error for the court to allow numerous witnesses for the State, who had known the decedent intimately and for a number of years, to testify, over objections properly made, that they had never heard him use any vulgar or profane language.

4. Inasmuch as the judgment of the court below refusing a new trial is reversed upon another ground, it is unnecessary to decide whether the court erred in overruling a motion for a mistrial, made by the defendant, on the ground that certain alleged misconduct on the part of the spectators in the court-room during the trial tended to prejudice the defense in the minds of the jury; as it is not probable that such an incident will occur at the next trial.

5. When all that the court charged the jury upon the subject of reasonable doubt is considered, that part of the charge upon this subject which is excepted to was not open to the criticism made upon it.

6. While one sentence separated from its context in the court's charge upon the subject of murder was objectionable, the error was not of such character as to cause the grant of a new trial, it being clear, when the court's entire charge upon the subject of murder is considered, that the jury could not have been misled by the single sentence embodying the error referred to.

7. The court's charge upon the subject of voluntary manslaughter was not error for any of the reasons assigned.

8. The court did not err in refusing to give the charge requested by counsel for the defendant upon the subject of good character, as the charge actually given sufficiently covered this subject.

9. The evidence upon the subject of title to the strip of land upon which it is insisted in the motion for a new trial that the decedent was committing a trespass at the time of the altercation between him and the defendant's wife, was not sufficiently definite to require the court to submit the question of the title to the strip of land or the question of trespass.

10. The court did not err in refusing the requests to charge, certain of them being unauthorized by the evidence, and the others, where not sufficiently covered by the general charge, not being in themselves altogether sound.

11. The assignments of error not specifically dealt with show no ground for the grant of a new trial.

No. 1149.   JULY 17, 1919.

Indictment for murder.   Before Judge Mathews.   Bibb superior court.   August 5, 1918.

*W. A. McClellan, T. J. Cochran,* and *Napier & Maynard,* for plaintiff in error.

*Clifford Walker,* attorney-general, *John P. Ross,* solicitor-general, and *M. C. Bennet,* contra.

BECK, P. J.   J. Q. Phillips was tried under an indictment charging him with the murder of Walter A. Fendt on the 5th day of May, 1918.   Upon the trial the jury returned a verdict of guilty, with a recommendation.   The defendant made a motion for a new trial, which was overruled, and to this judgment he excepted.

1.   During the progress of the trial, while a witness for the State was on the stand, counsel for the State, addressing the witness, said: "After you vacated the house in which the defendant lived at the time Mr. Fendt was shot, state whether or not any inquiry was made of you as to the right of Fendt and his family to use that alley along the rear of the two lots?"   Defendant's counsel objected on the ground that the evidence sought was irrelevant, and the solicitor-general said, "I expect to show the wife of the defendant inquired of the witness whether or not the Fendts had the right to use the alley behind the house and she was informed that they had that right.   The jury is presumed to know that the wife told the husband what happened where they were having conversations together and fusses together about the alley."   Thereupon the defendant's counsel moved for a mistrial on account of the statement of the solicitor-general, contending that the evidence was hearsay and could not bind the defendant.   The court overruled the motion, and the defendant excepted to this ruling.   This ground is without merit.   Whether the solicitor-general was correct or not. in the assumption that the wife told the husband of the conversation referred to, the statement of the contention to the court could not be treated as a ground for declaring a mistrial.   The solicitor-general did not state as a fact that the wife told the husband what had happened, etc., but stated that the jury "were presumed to know the wife told the husband," etc.   The jury is presumed to be composed of intelligent men, and we are not to assume that they

are swayed by every remark made by counsel in their arguments to the court upon the question of the admissibility of evidence.

2. Nor did the court err in refusing to declare a mistrial, upon motion made by defendant's counsel, because of repeated offers by the solicitor-general to prove the good character of the decedent, which had not been put in issue, after the court had ruled that such evidence was inadmissible.

3. Although the defendant's statement contained in part a recital that he heard the decedent, just before the shooting that resulted in his death, use to and of the wife of the defendant vile, opprobrious and insulting language, such as, "I will kill you, you damn bitch;" the court erred in allowing numerous witnesses for the State, who had known the decedent for a number of years and had known him intimately and who had been thrown with him frequently, to testify, over proper and timely objections, that they had never heard him use any vulgar or profane language. This testimony introduced by the State tended to put in evidence the general character of the decedent as to the particular vice in question; and this could not be done when his general character in reference to such a trait had not been attacked. *Worley* v. *State*, 138 *Ga.* 336 (75 S. E. 240). Moreover it put in evidence proof of particular acts of the deceased upon the occasion specified, which were in no way connected with the altercation or the difficulty which resulted in the homicide for which the defendant was being tried. The testimony as to the conduct of the decedent upon other occasions wholly disconnected with the difficulty which resulted fatally was entirely irrelevant, but it probably had the effect of materially strengthening the State's case, as the jury might think that it tended to contradict the statement of the defendant in his recital of the language and conduct of the decedent just prior to the shooting.

4. Inasmuch as the judgment of the court below refusing a new trial is reversed upon another ground, it is unnecessary to decide whether the court erred in overruling a motion for a mistrial, made by the defendant, on the ground that certain alleged misconduct on the part of the spectators in the court-room during the trial tended to prejudice the defense in the minds of the jury; as it is not probable that such an incident will occur at the next trial.

5. The court did not err, after having charged the jury upon

the subject of reasonable doubt, in further instructing them that "The doubt must be reasonable, in order to authorize an acquittal, from a consideration of the entire case, as distinguished from a mere vague conjecture of a possibility of innocence." When the entire charge upon the subject of reasonable doubt is considered, it will be seen that this statement by the court in the course of his charge was a part of his definition of reasonable doubt.

6. Another ground of the motion for a new trial complains of the following charge of the court: "Whenever one makes up his mind to kill another and executes the intention, then that is killing with express malice." This was error, because one may make up his mind to kill another and execute the intention under circumstances which would render the killing justifiable, and in such a case the killing would not be done with express malice. But we do not think that the error here pointed out requires the grant of a new trial, because, when the sentence here isolated is considered in connection with the entire charge of the judge upon the subject of malice, express or implied, it is clear the jury could not have been misled. On the subject of malice the judge charged in part as follows: "I charge you that when an intentional homicide is proven, that is, when it is shown that one has killed another human being, the law will presume that the killing was with malice and that the killing was murder, unless other facts appear in the case which negative this presumption, which rebuts, or which reduces the killing below the grade of murder. The charge in this case is murder. Murder is the unlawful killing of a human being, in the peace of the State, by a person of sound memory and discretion, with malice aforethought, either express or implied. You will observe that malice is an essential part of the definition of murder. Express malice is the deliberate intention unlawfully to take away the life of a fellow creature, manifested by circumstances capable of proof. Whenever one makes up his mind to kill another and executes the intention, then that is a killing with express malice. You will observe that the legal definition of malice is not ill-will or hatred, but a deliberate intention unlawfully to take away the life of a fellow creature. Express malice involves the element of deliberation, but this does not mean there should be any considerable amount of deliberation or any considerable length of the deliberation. Whenever one makes up his mind unlawfully to kill

another and executes that intention, that is express malice, and a killing with express malice is murder. It is not necessary there should be any previous plan or plot concocted and arranged by which the killer carried out his purpose. If he makes up his mind to kill" another with any degree of deliberation and immediately carries out that purpose, then that is a killing with express malice. The law implies malice in every case of a homicide where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart."

7. The court's charge upon the subject of voluntary manslaughter was not error for any of the reasons assigned.

8. The court did not err in refusing to give the charge requested by counsel for the defendant upon the subject of good character, as the charge actually given sufficiently covered this subject and was as follows: "In this case there is proof offered here as to the good character of the defendant Phillips. I charge you that good character is a substantive fact in the case, to be considered along with the other facts in the case; and although the other facts in the case may not leave a reasonable doubt in the minds of the jury as to the guilt of the defendant, still if the good character that is established, or that may be in the minds of the jury established of the defendant in the case, has the effect to raise a reasonable doubt in the minds of the jury as to his guilt, as to the guilt of the defendant, it would be the duty of the jury to give him the benefit of the doubt and acquit him. If, however, the other proof in the case than that of good character leaves no reasonable doubt in the minds of the jury as to the defendant's guilt, and if the proof of good character leaves no reasonable doubt as to the guilt of the defendant, when considered in connection with the other evidence, it would be 'the duty of the jury to convict the defendant regardless of the proof of good character. Give the defendant's good character that is proven in the case in the opinion of the jury due weight and such weight as you think it entitled to as bearing upon the question as to whether or not the defer⁻ant is guilty or not guilty."

9-11. It is unnecessary discuss the rulings contained in headnotes 9, 10, and 11.

*Judgment reversed. All the Justices concur.*