[Criminal No. 675. Filed June 30, 1928.]

[268 Pac. 611.]

MELVIN BURNETT, Appellant, v. STATE, Respondent.

130

Messrs. Clark & Clark and Mr. R. B. Westervelt, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Frank J. Duffy, Assistant Attorney General, for the State.

LOCKWOOD, J. — Melvin Burnett was informed against in the superior court of Yavapai county for the crime of murder. He was tried and convicted, the jury fixing the penalty at imprisonment for life, and, from the verdict, judgment, and order overruling the motion for a new trial, he has appealed to this court.

There are some six assignments of error which we shall discuss in their order. The first is that the court erred in overruling the challenge for cause of the juror Mercer. It is contended that this juror was disqualified because he had formed an opinion as to the guilt or innocence of the defendant, and in support of this defendant cites the case of *Stephens* v. *State*, 20 Ariz. 37, 176 Pac. 579, in which we stated:

"We conclude that a person who has formed and expressed an unqualified and fixed opinion as to the guilt or innocence of the accused in a criminal case is disqualified to serve as a juror in such case."

It is one of the cardinal principles of criminal law, expressed in almost every Constitution, and declared repeatedly by the courts, that the accused in a criminal prosecution is entitled to a trial by an impartial jury. The general principle, of course, is fundamental, and its mere statement is sufficient to convince any reasonable person that it is absolutely essential to the administration of real justice. The question, however, as to what is meant by an "impartial" jury has often been under consideration, and on that point different views have from time to time obtained. One of the first cases in which this matter was discussed was *United States* v. *Burr,* Fed. Cas. No. 14,692g, wherein Chief Justice MARSHALL said:

"The great value of the trial by jury certainly consists in its fairness and impartiality. Those who most prize the institution, prize it because it furnishes a tribunal which may be expected to be uninfluenced by an undue bias of the mind. I have always conceived, and still conceive, an impartial jury as required by the common law, and as secured by the Constitution, must be composed of men who will fairly hear the testimony which may be offered to them, and bring in their verdict according to that testimony, and according to the law arising on it. This is not to be expected, certainly the law does not expect it, where the jurors, before they hear the testimony, have deliberately formed and delivered an opinion that the person whom they are to try is guilty or innocent of the charge alleged against him. The jury should enter upon the trial with minds open to those impressions which the testimony and the law of the case ought to make, not with those preconceived opinions which will resist those impressions.

. . .

"Were it possible to obtain a jury without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by the court is, that light impressions which may fairly be supposed to yield to

the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him. Those who try the impartiality of a juror ought to test him by this rule. They ought to hear the statement made by himself or given by others, and conscientiously determine, according to their best judgment, whether in general men under such circumstances ought to be considered as capable of hearing fairly, and of deciding impartially, on the testimony which may be offered to them, or as possessing minds in a situation to struggle against the conviction which that testimony might be calculated to produce.''

The general principle thus laid down by the great Chief Justice has never been questioned seriously. It is in its application that the difficulty comes. For many years some of our courts, in their desire to be absolutely sure that the juror should be impartial, have apparently held that any knowledge whatever of the purported facts in the case, or belief as to the guilt or innocence of the defendant, was sufficient to disqualify a prospective juror. Such a rule might perhaps have secured a suitable jury in a day when means of communication were difficult, and when information was not easily disseminated, so that many intelligent men were unfamiliar with even important events which occurred out of their immediate neighborhood. Conditions, however, have changed vastly, and in the present day the details of all crimes of any importance or of a striking nature are certain to be broadcast through the press, and read, discussed, and commented on by practically every man of even mediocre understanding in the vicinage from which the jury to try the case must necessarily be drawn. An interpretation of the rule in the manner last stated

would necessarily mean that to-day practically all men of average attainments would be automatically disqualified from jury service in any criminal case of importance, and a defendant would be tried by men representing the lowest level of intelligence found in the community. Such a result would work as great an injustice as would be a trial by jurors who had already prejudged the case, and the more modern interpretation is well expressed in section 1024 of the Penal Code of Arizona of 1913, which reads as follows:

"When a challenge is made for the cause mentioned in subdivision thirteen of the preceding section, the fact that a person called as a juror has formed an opinion or impression based upon rumor, or upon newspaper statements (about the truth of which he has expressed no opinion) shall not disqualify him to serve as a juror in such case, if he shall upon oath state that he believes he can fairly and impartially render a verdict therein, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement."

The necessity for the practical application of the statute generally arises in a case where the situation may be illustrated as follows: A juror on *voir dire* states, in substance:

"Yes, I have read about the case; I have heard the matter discussed in a general way, by others who have read about it. I have formed an opinion as to the conclusions to be drawn from what I have read and heard. I have no opinion, however, as to whether what I have read and heard represents the true facts in the case, and, if called as a juror, I can and will lay aside everything, and return a verdict solely upon the evidence as it appears during the trial."

The true rule is well laid down in the case of *O'Mara* v. *Commonwealth,* 75 Pa. 424, wherein the court said:

"Taking all that the juror Hugh N. Tingley said in his examination, his opinion fell into the latter class. It was not a prejudgment, or an opinion made up from evidence known to be authentic and such as would be given in the trial; but it was one founded only on hearsay, and ready to give way to the truth as it would appear in the evidence. He said he had read accounts of this matter in the papers. Heard it talked about some. Formed an opinion he *thought*. That opinion would follow him into the jury box, if he had no evidence against it. Would influence him if he had no other evidence. The remainder of the examination in chief is but a repetition of the same thought. In his cross-examination, he said he had *not* formed an opinion from what he had heard, that would influence him, unless the evidence sustained it. And in reply to a question of the judge, whether he could enter the jury box and decide the guilt or innocence of the prisoners upon the evidence, and that *alone,* uninfluenced by any impression or opinion he had formed; he said he could, and that the opinion would not influence or bias his judgment. This case presents a test of the principles laid down in *Staup* v. *Commonwealth* (74 Pa. 458); and we must either recede, and go back to the practice of an age when ignorance of passing events constituted a characteristic of the times, and exclude every juror who has formed any opinion, even the slightest; or we must stand abreast with the present age, when every remarkable event of today is known all over the country tomorrow, and exclude those only whose opinions are so fixed as to be prejudgments, or have been formed upon the known evidence in the cause. It is needless to say the world moves and carries us with it, and if we lag behind we must commit the trial of the most important causes in life to those, so ignorant, their dark minds have never been smitten by the rays of intelligence.''

We hold that the formation or expression of an opinion in regard to the guilt or innocence of the defendant does not necessarily disqualify a juror. The opinion must be, not merely that, if what he has heard is true, a certain conclusion as to the guilt or

innocence of the defendant necessarily follows, but that what he has heard as a matter of fact is true, in his opinion, and that such belief as to its truth would follow him into the jury-box, and would be considered by him in determining the verdict he would return. The decision as to whether on this statement of law the juror as a matter of fact is disqualified or not must in each particular case rest in the sound legal discretion of the trial court, based upon the evidence. We have read the testimony of the juror Mercer on his *voir dire,* and are of the opinion the trial court did not err in overruling the challenge.

The second assignment of error is that the court erred in requiring the defendant to testify to details connected with his flight into Mexico after the homicide. It is admittedly the rule that the state may always show the simple fact that defendant has fled from arrest as showing a consciousness of guilt on his part. 16 C. J. 551. And the details of the flight are admissible so far as they tend to throw light on the matter. *Johnson* v. *State,* 120 Ga. 135, 47 S. E. 510. The extent to which such details may be shown is in the reasonable discretion of the trial court, and the record shows it did not allow the examination of the defendant on this point to proceed beyond reasonable limits.

The third assignment of error is that the state was allowed to prove the good character of the deceased for peace and quietude before an attack had been made upon it by defendant, and that the reputation of the deceased is therefore not in evidence. It is, of course, the rule in homicide cases that it is not competent for the state to introduce evidence to prove the good character of deceased until it has been assailed. *De Woody* v. *State,* 21 Ariz. 613, 193 Pac. 299; *Bowles* v. *Commonwealth,* 103 Va. 816, 48 S. E. 527; *Blocker* v. *State,* 61 Tex. Cr. Rep. 413, 135 S. W. 130; *Worley* v. *State,* 138 Ga. 336, 75 S. E. 240; *State*

v. *Eddon,* 8 Wash. 292, 36 Pac. 139; *Davis* v. *People,* 114 Ill. 86, 29 N. E. 192; *Kelly* v. *People,* 229 Ill. 81, 11 Ann. Cas. 226, 12 L. R. A. (N. S.) 1169, 82 N. E. 198; *Thomas* v. *People,* 67 N. Y. 218; *State* v. *Potter,* 13 Kan. 414; *State* v. *Reed,* 250 Mo. 379, 157 S. W. 316; *Childers* v. *Commonwealth,* 161 Ky. 440, 171 S. W. 149.

In the De Woody case, however, we stated as follows:

"It is to be observed, however, that when the defense in a prosecution for homicide puts the character of the deceased as a quarrelsome, turbulent or violent and dangerous man in issue, the state may support it by proofs that the deceased was a peaceable, quiet, and law-abiding man. Wharton on Homicide (3d Ed.), par. 269. Furthermore, the attack on the character of the deceased need not be direct as to his general reputation to render admissible evidence of his good character on the part of the state. *It is immaterial in what manner the attack is made, whether by evidence of general reputation or by any other species of evidence. If the issue is raised by the defense at all, the state may meet it by evidence of general reputation as to good character.* Wharton on Homicide, 3d Ed., par. 270; *People* v. *Gallagher,* 174 N. Y. 505, 66 N. E. 1113, affirming 75 App. Div. 39, 78 N. Y. Supp. 5. No general rule can be laid down for the determination of what will be held to constitute an attack by the defendant on the character of the deceased so as to 'open the door' for rebuttal on behalf of the state, but each case must be decided according to its own circumstances or facts. 13 R. C. L., par. 219, p. 917; *Kelly* v. *People, supra.*" (Italics ours.)

It is the contention of the state that in the case at bar the defendant did make the character of deceased for peace and quietude one of the issues. The homicide itself was admitted, but justification on the ground of self-defense was the defense, and defendant submitted testimony which, if believed by the jury, would naturally cause them to think deceased was a

violent and dangerous man whom defendant might justly fear. We are of the opinion that this evidence offered by the defense put the character of deceased sufficiently in issue so that the state was entitled to show his general reputation for peace and quietude.

The fourth assignment of error is that the court permitted the witness Fogal to testify as to the general reputation of deceased. This objection is based on the ground that Mr. Fogal had not lived in the vicinity where deceased resided for the five years last prior to the death of the latter, and it is objected that he was not qualified to testify on the point. It did appear on the examination that he had known the reputation of the deceased for a number of years prior to 1916. The general rule is that evidence as to reputation must be directed to such reputation as existed at the time of the occurrence rendered important by the evidence, or at a time sufficiently near thereto to be relevant; the remoteness, however, if not too great, going to the weight, rather than the admissibility, of the evidence. 22 C. J. 480. The decisions as to what time is too remote are varying, and seem to depend upon the circumstances of the particular case. It has been held in some cases that five, six or eight years is not too much. *Fry* v. *State,* 96 Tenn. 467, 35 S. W. 883; *Jones* v. *State,* 104 Ala. 30, 16 South. 135.

Generally speaking, whether the time is too remote to be relevant is a question to be decided by the trial court, whose action in passing on the matter will not be reviewed, unless an abuse of discretion appears. *Lawson* v. *State,* 32 Ark. 220; *State* v. *Lanier,* 79 N. C. 622; *Kelly* v. *State,* 61 Ala. 19. We think the record does not show an abuse of discretion on the part of the trial judge in admitting the evidence.

The fifth and sixth assignments of error are that the court erred in allowing two different witnesses to repeat certain parts of their testimony, thus placing

an undue emphasis thereon. The propriety of allowing a repetition of testimony is usually left to the trial court, and its action will not be held erroneous, unless a clear abuse of discretion appears. In this case we have examined the record in regard to the matters objected to, and are satisfied that there was no error in the rulings thereon.

This concludes the assignments of error. The defendant, as we have stated, admitted the homicide, but claimed that it was done in self-defense. The evidence as to the facts was in sharp conflict. The testimony of four eye-witnesses was to the effect that it was a cold-blooded and unprovoked murder. The testimony of defendant and one other witness was that the killing was justifiable. Under these circumstances, the question was undoubtedly one for the jury, and by their verdict they have determined the issue against the defendant. No error of law occurring during the trial of the case being pointed out to us, and the evidence sufficiently sustaining the verdict, the judgment of the trial court is affirmed.

ROSS, C. J., and McALISTER, J., concur.