LOUGHRIDGE *v.* THE STATE.

No. 10870.   OCTOBER 16, 1935.

*Carlton C. McCamy,* for plaintiff in error.

*M. J. Yeomans, attorney-general, John C. Mitchell, solicitor-general, B. D. Murphy* and *E. J. Clower, assistant attorneys-general,* contra.

HUTCHESON, Justice.   Terrell Loughridge was indicted jointly with Taft Loughridge for the murder of Frank Loughridge. Terrell Loughridge was tried and convicted, and was given the death penalty. Motion for new trial was overruled, and the defendant excepted.

There are fifteen special grounds of the motion for new trial, but by consolidating several of them we can consider the following questions:  (1) Did the court err in admitting the testimony complained of in the first thirteen grounds?  (2) Was it error to refuse to declare a mistrial on account of alleged improper examination of a witness by the solicitor-general?  (3) Was it error for the court to give to the jury the charge complained of in ground 15?

Twelve grounds assigned error on the admission of testimony of several witnesses that the accused, with his brother, Taft Loughridge, had perpetrated numerous acts of highway robbery within a short time prior to the crime for which he was on trial. In the record there appears a note from the trial judge as follows: "The State contended, in opening its case before the jury, that the defendant shot and killed his father, not intending to shoot him, but intending the shot for the officers to prevent his arrest by the officers for these robberies, and for the purpose of liberating his brother, Taft Loughridge, from the officers, Taft at the time being

in the custody of the officers at the place of the shooting for these robberies. The State contended that there existed a conspiracy between the defendant and his brother, Taft Loughridge, not only to engage in a joint enterprise in the series of robberies, but also to prevent arrest of either or both of them by the officers for these robberies. The evidence excepted to in these grounds of the motion for new trial was admitted solely for the purpose of throwing light upon the plan, scheme, motive, malice, and intent of Terrell Loughridge in shooting at the officers."

This question of the admissibility of proof of separate and distinct crimes other than that for which the accused is on trial has often been before our courts, and different views have been expressed relative thereto. The general rule is that testimony as to a crime other than that for which the defendant is being tried is not ordinarily admissible. The rule has been stated as follows: "Evidence of the commission of a crime other than the one charged is generally not admissible. To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other." *Cawthon v. State,* 119 *Ga.* 396 (46 S. E. 897). See also *Booth* v. *State,* 160 *Ga.* 271, 275 (127 S. E. 733). In *Cox* v. *State,* 165 *Ga.* 145 (139 S. E. 861), it was said: "When one is on trial charged with the commission of a crime, proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. This is the general rule, but there are some exceptions to it; as when the extraneous crime forms part of the res gestæ; or is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged." In *Wilson* v. *State,* 173 *Ga.* 275 (160 S. E. 319), this court said: "Evidence of the commission of one crime is not admissible upon the trial of the defendant

for another crime, where the sole purpose is to show that the defendant is guilty of such other crime. Where one is on trial charged with the commission of a crime, proof of a distinct and independent offense is never admissible, unless there is some logical connection between the two from which it can be said that proof of the one tends to establish the other. To this general rule there are some exceptions; as when the extraneous crime forms part of the res gestæ, or is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused or articles connected with the offense, or is evidence of prior attempts by the accused to commit the same offense upon the victim as that for which he stands charged; or where the proof of the extraneous crime tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged. . . In order that a collateral crime may be relevant as evidence, it must be connected with the crime under investigation as part of a general and composite transaction. The evidence objected to tended to establish a conspiracy on the part of the defendant and his companions embracing the general intent and purpose of committing robberies, . . and the evidence was admissible."

In the instant case it will be noted that the accused was jointly indicted with his brother for the homicide of their father. The State contended that the two brothers had entered into a conspiracy to commit highway robbery, and that these crimes led the sheriff to go to their home for the purpose of making an arrest, and thus led up to the homicide. Under this theory, and under the note of the trial judge, it can be easily seen how the other crimes were directly connected with the homicide and were all linked in the carrying out of the conspiracy charged. The evidence relating to the other crimes tended to show a general scheme or conspiracy to commit robbery and murder, including in its scope the particular offense in question, and was admissible over the objection that it was irrelevant. *While* v. *State*, 177 *Ga.* 115 (3) (169 S. E. 499); *Morris* v. *State*, 177 *Ga.* 106 (5) (169 S. E. 495).

█ Error is assigned on the refusal to declare a mistrial because of alleged improper conduct on the part of the solicitor-general in repeatedly asking certain questions of a witness. It appears that the witness refused to answer the questions propounded by the

solicitor-general, and that repetition occurred in an effort to elicit the information desired. The action of the solicitor-general was not of such character as to require declaration of a mistrial, especially in view of the statement of the court as follows: "The questions of the solicitor-general are not evidence; the questions are not; and since he has elicited no answer, there is no evidence." *Phillips* v. *State,* 149 *Ga.* 255 (99 S. E. 874).

■ Error is assigned upon the following charge of the court: "He admits killing his father, and his defense depends on whether or not he was justified and there was mitigation when he shot at the officers, if he shot at them or one of them; and you would look to all the facts and circumstances to see if there was justification or mitigation, if he shot at them or one of them," the complaint being that the accused did not plead justification, and that the charge was a misstatement of fact. In his brief, counsel for plaintiff in error says: "The charge complained of is correct as a matter of law, but is a misstatement of fact, being a statement positive in its effect that the accused admitted the killing." It is necessary, therefore, to examine the record to see if there was such admission. We find in the defendant's statement the following: "If I killed my father, it was an accident, and I didn't shoot to kill either; it looked like I was going to get killed or shot or something, and I shot at them, and I tried to give up once." Mrs. Dallas Warmack testified as follows: "I am a sister of sheriff Bryant. I was at the jail shortly after the sheriff was brought home after the shooting. The evening that they brought Terrell Loughridge in I talked to him. I got the bedding for him after the doctor came. He said he shot his father and then turned and shot the sheriff in the leg; he didn't say anything about his leg." There was sufficient testimony to justify the charge quoted above.

■ The only remaining ground assigns error upon the admission in evidence of the following testimony of J. T. Bryant, sheriff of the county, and a witness for the State: "Prior to Sunday, December 9th, when Frank Loughridge was killed and I was shot, I had received information of these robberies that were being committed on the highway. That information had been furnished me by Bill Berry and others who had been held up. They had given me the description of the car and the license number. On Sunday morning I was at the jail office, and Edgebert Loughridge came to

266

see me. When he came up that morning, he came in and talked to me a long time. He told me about the car. He took us to where it was. Edgebert told me that he wanted me to go down there and get those boys, because they had threatened him and the old man; that Otis Parsons kept them from shooting him. He said that they had been quarreling. He said Otis Parsons told him that if they hurt Edgebert Loughridge he would stop the whole thing. He said he came to the law, and they told him they would shoot it out with the law and him too, and he tried to get the old man to leave with him. He said that he told him that the boys said the car was stolen. He said that the boys had been running around too much, and he wanted me to go down there and investigate." It is contended that the evidence was hearsay and prejudicial. The evidence complained of having been objected to as a whole, the sole objection being that all of such evidence was hearsay, and it not being all hearsay and inadmissible, the court did not err in admitting it. *Barnard* v. *State*, 119 *Ga.* 436 (3) (46 S. E. 644); *Smalls* v. *State*, 99 *Ga.* 26 (2) (25 S. E. 614); *Gully* v. *State*, 116 *Ga.* 527 (42 S. E. 790); *Hudson* v. *State*, 153 *Ga.* 695 (2) (113 S. E. 519).

█ The evidence was sufficient to authorize the verdict.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*