26024. THOMPSON *v.* THE STATE.

DECIDED FEBRUARY 24, 1937. REHEARING DENIED MARCH 11, 1937.

*E. W. Roberts, Roberts & Roberts,* for plaintiff in error.

*Henry H. West, solicitor-general,* contra.

GUERRY, J. The defendant was indicted for the murder of William Riley. The jury returned a verdict of voluntary manslaughter, and the defendant prosecutes this writ of error complaining of the overruling of his motion for new trial.

Complaint is made that the court erred in refusing a request to give in charge to the jury the following: "If you believe from the evidence that the defendant, Thompson, did not know of his wife's guilt, but only suspected it, and endeavored in good faith to ascertain whether or not his suspicions were well founded, and he caught his wife and the deceased, Will Riley, in the act of adultery, or under circumstances showing that they had just committed or were about to commit this crime, then I charge you that he would be justified in killing the deceased, and you should acquit the defendant." The action of the judge was not erroneous. The charge was not adjusted to the evidence or the defendant's statement. The defendant and his wife were separated at the time of the tragedy. He maintained a home in Walnut Grove, and she lived in a house some miles away, which was furnished to her by the defendant. Cliff McMichael, a son-in-law of the defendant, lived about 300 yards from Mrs. Thompson, on the same side of the road. On May 11, 1935, he was in Walnut Grove in his wagon, and in returning home carrying some supplies to Mrs. Thompson from the defendant he picked up Mr. Thompson. Before they reached home Mr. Riley got on the wagon, and he and the defendant appeared to be on good terms. Both of them had pistols. It appeared in this connection that the deceased always carried a pistol. Mr. Thompson alighted at McMichael's house where Mrs. Thompson was helping her daughter, Mrs. McMichael, prepare supper; and after unloading the supplies at Mrs. Thompson's, McMichael and the deceased returned. Two of Mrs. Thompson's children and a child of Joe Thompson were there. The defendant did not eat, because he was suffering from pellagra, and a short time thereafter he decided to go fox hunting, and left. About thirty minutes later, Mrs. Thompson, her two children, Joe Thompson's child and the deceased left for Mrs. Thompson's house. Jay

Thompson came home about 11 o'clock and found there his mother, the three children, and deceased, and after talking to them for fifteen or twenty minutes he retired. At that time the children had retired. About 12 o'clock Mr. Riley, fully dressed with the exception of a hat, walked out on the porch into the yard and was shot four times by the defendant. The fatal bullet entered his back about one and a half inches to the right of his backbone, and came out in front in the region of his heart. On the ground near the deceased was found a flashlight which was shining in his face.

The defendant made a statement to the jury, the important part of which was as follows: "When I got home I stopped at the well to get some water, and went around the house by my wife's room, coming around by the front door. When I got to the window I heard talking in the room, and stopped. I went around and went to the back door, and it was fastened, and I turned around and come back towards the front door, and I heard the door open and somebody cussing coming out the door, and I stopped and stood by the porch and heard him say, 'If the damn rascal is out here it will be his last time.' He throwed his flashlight in my face and drew his pistol. The thing frightened me so that I went to shooting at that light to save my life. . . If he hadn't been in the house with my wife with the lights out and my little children and my house, that house, this thing would never had happened. He come out on me. That was unthoughtful, and when he throwed that light in my face and said, 'G——d——you, I have got you now,' I begin shooting at that light." Mr. Riley was a first cousin of defendant, was a man about 60 years of age, and had been in very ill health. He was very deaf. He was fully dressed, and nothing about him indicated that he had recently had sexual intercourse. Mrs. McMichael testified that she was reasonably sure her mother was menstruating at the time.

It will be seen from the above detailed facts that there was no evidence, nor does the defendant's statement indicate, that he caught the deceased and his wife in the act of adultery. Therefore that part of the requested charge, that if defendant caught them in the act of adultery, etc., was inapplicable to the proved facts in the case, and for this reason the trial judge did not err in refusing to give it in charge to the jury. See *Myers* v. *State,*

97 *Ga.* 76 (25 S. E. 252); *Lindsay* v. *State,* 138 *Ga.* 818 (76 S. E. 369); *Phillips* v. *State,* 149 *Ga.* 255 (99 S. E. 874). If we are to accept the statement of the defendant, he killed the deceased solely to protect his own life. See, in this connection, *Futch* v. *State,* 90 *Ga.* 472 (16 S. E. 102); *Ward* v. *State,* 25 *Ga. App.* 296 (3) (103 S. E. 726); *Ripley* v. *State,* 7 *Ga. App.* 679 (2) (67 S. E. 834); *Richardson* v. *State,* 70 *Ga.* 825 (2). We doubt very seriously whether the evidence authorized a charge on the theory of the protection of his wife from adultery, or on the right of a husband to assault another, where he comes upon such other and his wife in circumstances which leave it in doubt whether the criminal act is over or just about to begin (see *Yopp* v. *State,* 131 *Ga.* 593, 62 S. E. 1036) and therefore the charge of the court on this general subject was more favorable than the defendant had a right to demand. Furthermore, the evidence did not show that defendant's wife had ever been guilty of acts of illicit intercourse with the deceased, and the requested charge that "if you believe from the evidence that the defendant . . did not know of his wife's guilt, but only suspected it," called for an intimation of opinion by the judge that her guilt had been established. For this additional reason the judge acted properly in refusing the request. In this connection the defendant requested a further charge as follows: "I further charge you, gentlemen of the jury, that a husband may attack for intimacy with his wife in his presence, raising a well-founded belief that the criminal act is just over or about to begin; and the adulterer, though in danger, has no right to defend himself by using a deadly weapon." There was no evidence that the deceased was guilty of any act of intimacy with defendant's wife in his presence. Therefore the request was not adjusted to the evidence.

The remaining assignments of error are without merit, and the evidence amply supported the verdict. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*