584 P.2d 1149

**STATE of Arizona, Appellee,**

v.

**Larry Eugene EVANS, Appellant.**

No. 3721.

Supreme Court of Arizona,
In Banc.

Sept. 11, 1978.

§ 13–454(E)(2) an aggravating factor existed in that the defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person, and that no factor which would have operated in mitigation existed. This appeal followed.

The facts presented at trial are that Charles Pope, a customer, and Thomas Scott, the bartender, were at the Bar X Tavern in Phoenix, on the night of January 8, 1976. Between 9:00 and 9:30 p.m. a man entered the bar and ordered a bottle of beer. Some time after being served he produced a gun, telling Scott that "This is a holdup" and "I mean business." As Scott turned from the cash register, the assailant shot him in the neck, critically wounding him.

Pope was told to move into the back storage room of the bar. He complied, with the assailant close behind to make sure that he did so. Pope remained crouched in the back room for about 20 minutes until he could no longer hear the intruder moving around.

When he re-entered the bar Pope found Scott unconscious. He telephoned the police but on their arrival, because he was so inebriated, Pope was not able either to give an adequate description of, or subsequently recognize the assailant.

Thomas Scott was taken to the hospital where he died several days later.

Only Pope's glass, a beer bottle and another glass were discovered on the bar. Fingerprints lifted from the beer bottle and glass proved to be those of the appellant. It was also found that more than $3,600 was stolen from the safe.

The police investigation revealed that the appellant's sister, Nancy, was a former employee of the tavern and that the appellant had left Phoenix for Illinois two days after the incident.

The appellant was interviewed by the Phoenix police in Illinois and subsequently returned to Phoenix. While in jail awaiting trial, the appellant confided the details of the crime to another inmate, Tommy Ray Hammock.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Acting Atty. Gen., by William J. Schafer, III, and Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

James H. Kemper, Phoenix, for appellant.

HOLOHAN, Justice.

The appellant, Larry Eugene Evans, was tried by a jury and convicted of first-degree murder and armed robbery on August 27, 1976. On September 23, 1976, following an aggravation-mitigation hearing pursuant to A.R.S. § 13-454, the trial judge sentenced appellant to concurrent sentences of death (for the first-degree murder) and seventy-five years (for the armed robbery). The trial judge found that pursuant to A.R.S.

Hammock, who was seeking leniency for certain felony charges against him, reported the details of all the conversations to the police. On the basis of Hammock's testimony, the physical evidence at the scene of the crime and testimony of other patrons of the bar, appellant was tried and convicted of the crimes charged. This appeal followed.

Appellant has raised three issues:

(1) Whether the trial court's disqualification *sua sponte* of a juror during voir dire was error;

(2) Whether the defense was unduly restricted in its cross-examination of Thomas Hammock;

(3) Whether the appellant was improperly sentenced to death.

## 1. THE EXCUSE OF THE JUROR.

During voir dire, the trial judge asked, "Do any of you feel that there is never any excuse or justification for the taking of a human life?" The response to this question resulted in an exchange of comments between the judge and two jurors, Bein and Wickander.[1] When Wickander said that he

did not ever believe that the taking of a human life could be justified under any circumstances, the trial judge, with no further comment or explanation, excused him.

The defense objected and later in chambers argued that the defense had been prejudiced by the juror's removal.

The appellant at no time explained how the removal of one particular juror damaged his case, nor has any contention been made at any time that the remaining jury was not impartial.

 The decision as to whether a juror is disqualified rests in the sound discretion of the trial court. *State v. Moraga*, 98 Ariz. 195, 200, 403 P.2d 289, 293 (1965); *State v. Brady*, 66 Ariz. 365, 189 P.2d 198 (1948); *Burnett v. State*, 34 Ariz. 129, 268 P. 611 (1928). Further, under 17 A.R.S. Rules of Criminal Procedure, rule 18.4(b), the trial court has the authority to remove a juror from the panel if the court reasonably believes that a fair and impartial verdict could not be rendered by the juror.[2] We find no abuse of discretion in the record before us.[3]

---

1. "[THE COURT]: Do any of you feel that there is never any excuse or justification for the taking of a human life?

"A JUROR: Repeat that, please.

"THE COURT: All right. Do any of you feel that there is never any excuse or justification for the taking of a human life?

"Mr. Bein.

"MR. BEIN: Would this include capital punishment?

"THE COURT: No. It means never, under any circumstances. The key word is 'never'. That there is never any excuse, no matter what, or any justification, no matter what, for the taking of a human life.

"MR. BEIN: In other words, if I was in favor of capital punishment, I should raise my hand?

"THE COURT: No. That's not so.

"It means if you think that under no circumstances, at any time and under—no matter what there is, never a justification for taking a human life, then you would raise your hand.

"You don't believe human life should ever be taken?

"MR. BEIN: Oh, oh. I got it.

"THE COURT: Mr. Wickander.

"MR. WICKANDER: I don't think anybody should take a human life.

"THE COURT: Under any circumstances?

"MR. WICKANDER: No.

"THE COURT: You're including if somebody was attacking you and threatening to kill you, you would have no justification for taking a human life?

"MR. WICKANDER: There has got to be a better way.

"THE COURT: You really believe that under those circumstances there still would be no justification; is that correct?

"MR. WICKANDER: Yes.

"THE COURT: You may be excused."

2. 17 A.R.S. Rules of Criminal Procedure, rule 18.4(b) provides:

Challenge for Cause. When there is a reasonable ground to believe that a juror cannot render a fair and impartial verdict, the court, on its own initiative, or on motion of any party, shall excuse him from service in the case. . .

3. Moreover, regardless of the propriety of excusing [the juror], we would not be inclined to reverse. A defendant is entitled to an array of impartial jurors to whom he may direct his peremptory challenges but, having been provided with such a panel, he suffers no prejudice if a juror, even without sufficient cause, is excused by the court. *United States v. Calhoun*, 542 F.2d 1094, 1103 (9th Cir. 1976); *United States v. Puff*, 211 F.2d 171, 184–85 (2d cir.),

■■ We do, however, believe that the inquiry of all parties on voir dire should be directed to relevant issues which will be considered in the case at trial. As we read the record of the colloquy between the trial judge and the venireman, the court's inquiry went to issues of excuse or justification for the taking of a human life. Those defenses were not raised by the appellant and they were not, therefore, issues which were to be considered by the jury. The error, however, on the record in this case, was harmless. Appellant suffered no prejudice.

## 2. THE SCOPE OF HAMMOCK'S CROSS–EXAMINATION.

Appellant contends that the trial court unduly restricted his cross-examination of Thomas Hammock, the state's main witness, and that this restriction constituted reversible error.

At trial Hammock testified to conversations he had had while a cellmate of the appellant's in which appellant admitted his participation in the crime together with certain details which Hammock, who had been in jail before the incident, could not have otherwise known.[4]

On cross-examination, the defense elicited the following facts for the jury's deliberation on Hammock's credibility and motive for testifying:

—That Hammock had previously escaped from the Adobe Mountain School, an institution for delinquents.

—That during the escape his companion had been killed in a car accident which was the culmination of a shooting chase with the police.

—That when he was arrested Hammock had in his possession burglary plans for Phoenix homes, and instructions on the use of explosives.

—That in return for his testimony against the appellant, the state reduced the felony charges against Hammock to a misdemeanor and placed him on probation.

—That Hammock was afraid of going to prison because he had informed on some people on certain matters and those people were currently in the prison to which he could be sent.

—That Hammock had no reservations about lying to stay out of prison.

—That Hammock had also told the police about another man who allegedly confessed a murder to him.

When the defense sought to inquire into the nature of the transaction that Hammock had been involved in with some people in Tucson and the name of the other alleged confessed murderer, the prosecution and the trial court respectively raised objections with regard to the materiality of the defense questions. Neither line of inquiry was allowed and it is this restriction to which appellant objects.

■ It is true that in Arizona wide latitude is allowed on cross-examination. The key, however, is that the inquiry must have relevancy to the issues at trial. *State v. Gilreath*, 107 Ariz. 318, 320, 487 P.2d 385, 387 (1971).

■ While the right of cross-examination is guaranteed by both the federal and Arizona Constitutions, the right does not confer a license to run at large in cross-examination. *State v. Fleming*, 117 Ariz. 122, 571 P.2d 268, 271 (1977).

■ The trial judge has the discretion and responsibility to keep cross-examination within the scope of the rules of evidence. Here, the areas the defense sought to question were not material to any issue in the case, and, if explored, would have injected collateral matters which might have confused the jury. The defense had brought

cert. den. 347 U.S. 963, 74 S.Ct. 713, 98 L.Ed. 1106 (1954). *See Vesely v. United States*, 276 F. 693, 695 (9th Cir. 1921).

**4.** The defense questioned Hammock about the contents of newspaper articles which appeared at the time of the crime and which contained some details of the crime. Hammock testified that he had read no newspapers while in jail; the articles themselves were not introduced into evidence by the defense.

out sufficient matters by cross-examination to attack the credibility of the witness. The additional matters, being collateral, were properly excluded. We find no abuse of discretion in the action of the trial judge.

### 3. THE DEATH SENTENCE.

After the defendant had been convicted of first-degree murder, the trial court conducted the sentencing hearing required by A.R.S. § 13–454(A). After hearing the evidence presented at the hearing, the trial court found the existence of one of the aggravating circumstances set forth in A.R.S. § 13–454(E), found no mitigating circumstances described in A.R.S. § 13–454(F), and sentenced the defendant to death.

The appellant challenges the finding of the trial court that an aggravating circumstance had been proved. The trial court found that the defendant had previously been convicted of a felony in the United States involving the use or threat of violence on another person. A.R.S. § 13–454(E)(2).

The finding of the trial court was based on the evidence offered by the state of two prior felony convictions of the appellant in California. The first conviction in 1967 was for Attempted Second-Degree Robbery. The second conviction in 1968 was for Conspiracy to Incite to Riot. While there may be some question of the applicability of the conspiracy conviction being considered an aggravating circumstance, there is no doubt that the attempted robbery of the victim named in the California conviction was an aggravating circumstance as defined in A.R.S. § 13–454(E)(2).

Although the appellant did not attempt to present mitigating factors at the sentencing hearing we must conclude that he was relying on the limitations on mitigating factors imposed by A.R.S. § 13–454(F). Since the sentencing in this case, the United States Supreme Court has spoken on the issue of limiting mitigating factors. *See Lockett v. Ohio,* —— U.S. ——, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Bell*

*v. Ohio,* —— U.S. ——, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978). In the light of the recent decisions of the federal Supreme Court, this court, in *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), held that mitigating factors could not be limited as was attempted in A.R.S. § 13–454(F). We held that a defendant must be allowed to present any mitigating circumstances which might tend to show why the death penalty should not be imposed.

The matter of appellant's sentence must be returned to the trial court for further hearing so that appellant may present mitigating circumstances. After hearing evidence of mitigating circumstances the trial court shall resentence the appellant and shall impose the sentence of death if there are no mitigating circumstances sufficiently substantial to call for leniency. A.R.S. § 13–454(D).

The judgment of conviction is affirmed, but the case is remanded to the trial court for further hearing and resentencing.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS, and GORDON, JJ., concur.